**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Climmar CLARK, Appellant.**

Superior Court of Pennsylvania.

Argued March 19, 2002.

Filed June 25, 2002.

Paul D. Boas, Pittsburgh, for appellant.

Michael W. Streily, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: JOHNSON, BENDER and MONTEMURO *, JJ.

## OPINION BY BENDER, J.

¶ 1 This is an appeal from a judgment of sentence imposed upon Appellant after he was convicted of various drug possession charges in a jury trial. Appellant raises four issues for our consideration, whether the court erred in failing to grant Appellant's motion to suppress, whether the court erred in allowing the jury to be picked in violation of Pa.R.Crim.P. 631(E)(2), whether the court erred in allowing the Commonwealth to improperly comment on Appellant's post-arrest silence and whether the court erred in allowing the prosecutor to make improper comments in her closing argument. We vacate and remand.

¶ 2 On the evening of April 21, 1999, the vehicle Appellant was driving was stopped by Pittsburgh Police Detectives Brian Johnson and Charles Hanlon after they observed the vehicle being driven at a high rate of speed and failing to stop at several stop signs. As the detectives approached the vehicle, they detected a strong odor of marijuana. Appellant and his passenger, Mario Dixon, were ordered out, and to the back, of the vehicle, whereupon they were frisked for weapons. At approximately the same time, another City of Pittsburgh Police officer, Officer Matthew Gray, who was at the scene providing assistance, began peering into the vehicle with the assistance of a flashlight. While illuminating the interior of the vehicle, Officer Gray observed a bag of what appeared to be marijuana on the vehicle's console near the gear shift. Officer Gray notified one of the detectives of the discovery and was directed to retrieve the substance. Officer Gray then reached into the vehicle and retrieved the bag. At that time, Appellant

and his passenger were arrested and placed in a police van for transport.

¶ 3 While en route to the County Jail, Officer Banaszak was riding in the passenger seat and was turning periodically to check on Appellant and Dixon through a window that separated the back of the wagon from the driving compartment. As Officer Banaszak turned on one occasion, he observed Appellant lying on the bench seat with his head near a drainage grate, spitting an object from his mouth. The wagon was stopped and the object was recovered and discovered to be a plastic bag containing twenty-three (23) separate baggies of suspected crack cocaine. That substance was later confirmed to be crack cocaine with a total weight of 6 grams. Similarly, the suspected marijuana was so confirmed and found to weigh 1 gram.

¶ 4 Prior to trial, Appellant filed a motion to suppress, which was denied. Appellant proceeded to a jury trial that commenced on November 15, 2000 and ended on November 20, 2000 with his conviction. Following sentencing, Appellant filed the present appeal.

¶ 5 Appellant first argues that the court erred in not granting his motion to suppress the marijuana observed on the console of his vehicle. The trial court concluded this evidence was properly seized as "in plain view." Appellant asserts the plain view doctrine does not apply because the police did not have "a lawful right of access to the object." Appellant further contends that the cocaine would be subject to suppression as fruits of an unlawful arrest. The crux of Appellant's argument is that although the marijuana may have been "in plain view" inside the vehicle, since he and his passenger had already been removed from the vehicle,

* Retired Justice assigned to Superior Court.

the police had no right to lawful access of the contraband. In our opinion, Appellant's argument runs squarely against the cases of *Commonwealth v. Petroll*, 558 Pa. 565, 738 A.2d 993 (1999), and *Commonwealth v. Colon*, 777 A.2d 1097 (Pa.Super.2001).

¶ 6 Both *Petroll* and *Colon* involved seizures of items from automobiles that were observed in plain view inside the interior of a motor vehicle. In both cases the Commonwealth argued that the seizures were legal under the plain view doctrine, and in both cases the seizures were upheld. With respect to the applicability of the plain view doctrine, *Colon* seemingly draws a distinction between searching a vehicle without a warrant and seizing an item in "plain view," even if the item happens to be inside a motor vehicle. Thus, under *Colon*, police officers might be prohibited from searching a vehicle once the occupants have been removed, but the officers are not prohibited from seizing contraband observed in plain view inside the vehicle after a lawful stop.

¶ 7 *Petroll* asserts that "there can be no reasonable expectation of privacy in an item that is in plain view." 738 A.2d at 999. With respect to the position of the police officer when the item is observed, *Petroll* merely requires that the officer be in a "lawful vantage point." Thus, we can see no material distinction between the facts of the present case and *Petroll* and *Colon*. As such, Appellant's argument fails.

■ ¶ 8 Appellant also asserts that the court erred in allowing questioning of Appellant that revealed his post-arrest silence. We find this argument meritorious. During examination of Detective Charles Hanlon, the Assistant District Attorney was permitted to ask a line of questions that resulted in an explicit reference to Appellant's refusal to speak after having been read his *Miranda* rights. The exchanges in question follow:

> Ms. Foy: ... After you placed them both under arrest, what happens next?
>
> Officer Hanlon: Mr. Dixon's upset because he's being charged with the marijuana. So at that point I always carry a Miranda card in my wallet—
>
> Ms. Foy: Let me interrupt you for one second. Although everyone may know from television exactly what Miranda warnings are, can you explain to the jury, please, and for the record what the Miranda warnings consist of.
>
> Officer Hanlon: Miranda warnings are your rights as someone who's under arrest or under interrogation.
>
> Mr. Boas: I'm going to object to this whole area. I'm going to object on the basis of the earlier sidebar.
>
> The Court: Okay. I'll overrule.
>
> . . .
>
> Ms. Foy: Were those Miranda warnings given to the Defendant?
>
> Officer Hanlon: Yes.
>
> . . .
>
> Ms. Foy: Did he have any response after being read the Miranda warnings?
>
> Officer Hanlon: He did not answer any of those questions.

N.T. Trial, 11/16–20/2000 at 217–18. A second exchange followed:

> Ms. Foy: Officer, detective, Mr. Boas made several references to the preliminary hearing transcript.... Do you recall testifying at the preliminary hearing?
>
> Officer Hanlon: Yes, ma'am.
>
> Ms. Foy: And do you recall what you say [sic] regarding the statements made by Mr. Dixon and statements or lack of statements made by the Defendant?
>
> Officer Hanlon: Yes, ma'am.
>
> . . .

Ms. Foy: And, detective, at the preliminary hearing you stated that after you had read the Defendant his Miranda warnings, he didn't say anything to you; correct?

Officer Hanlon: No, ma'am, he did not.

Ms. Foy: That is his constitutional right to do so, right?

Officer Hanlon: Yes, ma'am.

*Id.,* at 248–49.[1]

The above exchanges took place after an initial inquiry of Detective Brian Johnson took a similar path and led to an objection by Defense Counsel that was sustained. That exchange took place at sidebar and reads:

Mr. Boas: Your Honor, I understand that the Commonwealth is trying to show that the reason Mr. Clark didn't say anything is because somehow that's consistent with him later spitting dope out of his mouth. One of the problems, however, is we get dangerously close to them commenting on his silence.

The Court: I agree.... I just wrote "no response from Defendant, violation of Fifth Amendment."

Mr. Boas: I mentioned this earlier to Miss Foy and I have said I was going to bring it up. I know they have a right to try to argue there's some indication he has something in his mouth, but I think when they're questioning him, I mean—

The Court: I agree.

Mr. Boas: I don't know how to deal with this. I object to it. And—

The Court: Your objection is sustained.

*Id.,* at 137–38.

¶ 9 Appellant correctly asserts that the Supreme Courts of both the United States and Pennsylvania have vigilantly protected against references to a defendant's post-arrest silence. In *Commonwealth v. Costa,* 560 Pa. 95, 742 A.2d 1076, 1077 (1999), our Supreme Court stated "[i]t is well established that a defendant enjoys a constitutional right to remain silent and that it is a violation of that right to make reference at trial to his post-arrest silence." (citation omitted). The Court further stated:

We have consistently regarded testimony about a defendant's silence as having an extremely high potential for prejudice. In *Clark,* 533 Pa. at 587, 626 A.2d at 157–58 (footnote omitted), this court stated: "An impermissible reference to an accused's post-arrest silence constitutes reversible error unless shown to be harmless.... Because of its nature, an impermissible reference to the accused's post-arrest silence is innately prejudicial."

*Id.* In *Costa* the offending testimonial passage was very brief and, some might argue, not terribly flagrant. The passage reads:

Q. When were the charges filed against the defendant for his alleged sexual abuse of Terry Foster?

A. That would have been August 23rd of 1993.

Q. Did the defendant say anything to you when these charges were filed?

A. No.

*Id.* Despite the rather fleeting nature of the reference, our Supreme Court found that counsel was ineffective for failing to lodge an objection to the testimony. The Court commented "[t]he prosecutor's elicitation of this testimony was obviously intentional, and the reference to appellant's silence could not have been more clear." *Id.* Of course, if that assessment was true in *Costa,* it is undeniably so here. Not

---

1. In this instance, Appellant's counsel objected after the exchange took place phrasing it as a "renewal" of his earlier objection. The objection was overruled.

only had the line of questioning been the subject of an objection that had been sustained, but there was also a sidebar discussion dealing with this very matter. Thus, it cannot be asserted that the reference was inadvertent. Rather, the prosecutor deliberately questioned the witness in this regard. Moreover, unlike in *Costa*, there was a direct reference to *Miranda* rights and the right to remain silent. Thus, the fact that Appellant stood mute after arrest despite being given the opportunity to make a statement was reinforced.

¶ 10 We understand that the Commonwealth's theory of the case was that Appellant had secreted the bag of drugs in his mouth at the time of arrest. As such, a point of contention was whether or not Appellant's actions prior to being placed in the Police Wagon, including speaking, were consistent with a lack of an impediment in his mouth. Yet, as argued by Appellant, and graciously admitted by the Commonwealth,[2] this point could have been made without specifically pointing out Appellant's silence after arrest as well as the constitutional right to remain silent. Indeed, in our opinion, as the trial unfolded the focus of the exchanges in question seemed to shift from possible impediments in Appellant's mouth to Appellant's exercising his right to remain silent. In light of *Costa* and other precedent, we believe this was an impermissible questioning of the witness.

■ ¶ 11 Our inquiry does not end there, however. Pursuant to *Costa*, it is incumbent upon Appellant to show prejudice to gain relief for the violation. Yet,

under the standard enunciated in *Costa*, we have little doubt that Appellant has met this hurdle. In *Costa*, our Supreme Court indicated that relief was due unless the error was "harmless." The term "harmless" was equated to a finding that it was clear that the error could not have contributed to the verdict. *Id.* Clearly, we cannot reach that conclusion here.

¶ 12 The evidence that Appellant had possessed the bag of "crack" cocaine consisted of circumstantial evidence—the drugs were found in a confined area where Appellant was one of only two occupants—and Officer Banaszak's testimony that he observed Appellant spitting something from his mouth in the back of the wagon. However, there were circumstances available to impeach Officer Banaszak's testimony. First, Officer Banaszak's observation came from the front seat of the Police Wagon through a glass window, which was no more than eighteen-by-eighteen inches, when he coincidentally turned and observed Appellant lying down on the bench near the front wall of the wagon. It could be argued that, under those circumstances, Officer Banaszak could not get a good view, or even any view of Appellant's mouth. Second, credibility was paramount to a finding of guilt and it is impossible to measure the degree to which Appellant's post-arrest silence might have impacted upon the jury's assessment in that regard. Under these circumstances, the commentary regarding Appellant's post-arrest silence may very well have contributed to the verdict by creating the impression of a

**2.** We applaud the candor displayed by the Commonwealth in its brief to this Court. The Commonwealth's candor in admitting that Appellant's issue may have merit and that the point of contention could have been handled in such a way as to avoid commenting on Appellant's silence after arrest certainly makes this Court's reviewing task easier and

helps to ensure a correct application of the law. Although, as the Commonwealth points out, the Rules of Professional Conduct impose this obligation upon all litigants, it seems that the Allegheny County District Attorney's Office exercises this duty with a high level of diligence and integrity.

guilty conscience and, thus, cannot be deemed harmless.

¶ 13 In light of the above analysis, we must vacate the judgment of sentence and remand for a new trial.[3]

¶ 14 Judgment of sentence vacated, remanded for new trial. Jurisdiction relinquished.

3. Appellant also asserts that the court erred in allowing the jury to be selected in violation of Pa.R.Crim.P. 631(E)(2) in that his attorney was forced to exercise preemptory challenges prior to exercising all "for cause" challenges. In the present case, a pool of jurors was first selected and subjected to a group *voir dire*. They had also filled out the jury questionnaires, as required by the rule. After the group examination, the jurors were individually called up to the counsel table and subjected to individual questioning. After the individual questioning, counsel were required to express a challenge for cause if they believed one existed. Barring the striking of a juror for cause, counsel were then required to either exercise a preemptory challenge or "accept" the juror. Once accepted, the juror could not be later stricken with a preemptory challenge. In this respect, the system employed was a combination or hybrid of the "individual *voir dire* and challenge system" and the "list system of challenges." See Pa.R.Crim.P. 631(E)(1) & (2).

It is clear that the system of jury selection employed in the present case violates the strict wording of Pa.R.Cr.P. 631. As a review of that rule bears out, if the "list system" of challenges is employed, then preemptory challenges are not to be exercised until after all challenges for cause have been exercised. The primary characteristic of this approach is that each attorney has the opportunity to exercise his preemptory challenges on a priority basis after all prospective jurors have been examined. So employed, each attorney may strike off the jurors he or she least prefers to hear the case.

Given our disposition of the other issues, it is unnecessary for us to reach this issue and we express no opinion on whether the violation that occurred would have warranted the granting of a new trial. Nevertheless, the Rules of Criminal procedure are not merely advisory. They were drafted with the intention that they would be faithfully applied. We see no reason that Pa.R.Crim.P. 631 should be ignored upon retrial.