924 A.2d 621

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Henry McCREE, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 2005.

Resubmitted April 13, 2007.

Decided May 31, 2007.

Karl Baker, Esq., Karl Lawrence Morgan, Esq., Defender Association of Philadelphia, Philadelphia, for Henry McCree.

Hugh J. Burns, Jr., Esq., Peter Carr, Philadelphia District Attorney's Office, Philadelphia, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice EAKIN.

We granted allowance of appeal to clarify the standard for the plain view exception to the warrant requirement.

On September 24, 2002, undercover police officer Stacey Wallace was investigating illegal sales of prescription drugs at 700 West Girard Avenue in Philadelphia. At 8:55 a.m., she came in contact with a man identified as "Boyer." Officer Wallace asked Boyer if he had any pills for sale; Boyer indicated he did not, and that he needed to wait for a friend to get the pills. Boyer left the scene, returned 15 to 20 minutes later, and handed Officer Wallace eight Xanax[1] pills. Officer Wallace handed Boyer a pre-recorded $20 bill and asked Boyer if he could get her more pills. Boyer indicated he could, and Officer Wallace handed him a pre-recorded $10 bill. Boyer walked to a blue Pontiac, sat in the passenger's seat, and spoke to the person sitting in the driver's seat. Officer Wallace notified back-up officers that she believed a narcotics sale was in progress in the vehicle.

At 9:15 a.m., police officer Jeffrey Cujdik[2] and his partner were directed to stop a man sitting inside a blue Pontiac. Officer Cujdik approached the driver's side of the Pontiac, and his partner approached the passenger's side. Officer Cujdik observed appellant, who was sitting in the driver's seat, shove an amber container under a seat cushion on top of the driver's seat. Officer Cujdik believed the container was a pill bottle.

[1]. Xanax is a brand of alprazolam. Webster's New Universal Unabridged Dictionary 2195 (1996). Alprazolam is a potent prescription drug, used to treat anxiety. *Id.,* at 60.

[2]. The opinions of the Superior Court and the trial court inadvertently refer to Officer Cujdik as "Cudjik."

Officer Cujdik asked appellant to step outside the vehicle, which appellant did. Officer Cujdik reached under the driver's seat cushion and recovered the bottle containing 52 blue pills, later determined to be Xanax.

Officer Cujdik took appellant to the back of the Pontiac. The driver's side front door was left open. Officer Cujdik walked to the door and saw two more pill bottles in the door pocket. Officer Cujdik removed them and found 12 OxyContin[3] pills in one bottle and 25 Percocet[4] pills in the other. All three pill bottles bore appellant's name.

Appellant filed a pre-trial motion to suppress the drugs. The trial court denied relief, and the matter proceeded to a bench trial; appellant was convicted of possession with intent to deliver Xanax.[5] The court found appellant not guilty of conspiracy and possession of Xanax. Appellant was sentenced to nine to 23 months imprisonment, followed by two years of reporting probation.[6] Appellant appealed, arguing the trial court improperly admitted all three pill bottles into evidence, and that there was insufficient evidence to sustain his conviction.

In its Pa.R.A.P.1925(a) opinion, the trial court explained the officers were justified in approaching the vehicle and had probable cause to arrest Boyer; thus, they were at a lawful vantage point when Officer Cujdik saw appellant secrete the

3. OxyContin is a potent prescription drug approved for the treatment of moderate to severe pain. *See* United States Food and Drug Administration, Center for Drug Evaluation and Research, OxyContin Information: FDA Strengthens Warnings for OxyContin, http://www.fda.gov/cder/drug/infopage/oxycontin/ (last visited Feb. 14, 2006).

4. Percocet is also a potent prescription drug approved for the treatment of moderate to severe pain. *See* Endo Pharmaceuticals, http://www.endo.com/healthcare/products/percocet.html (last visited Feb. 14, 2006).

5. 35 Pa.C.S. § 780–113(a)(30). While it is unclear from the record below, appellant apparently was not charged for crimes related to the OxyContin or Percocet.

6. Initially, the trial court sentenced appellant to house arrest, followed by probation. At appellant's request, the court modified the sentence to imprisonment because he did not have a telephone for his residence, a requirement of house arrest.

Xanax pill bottle under his seat cushion. The plain view exception to the warrant requirement allows the police to seize objects that are viewed from a lawful vantage point where the incriminating nature of the object is immediately apparent. Trial Court Opinion, 7/2/03, at 6 (citing *Commonwealth v. Petroll*, 558 Pa. 565, 738 A.2d 993 (1999); *Commonwealth v. Ballard*, 806 A.2d 889 (Pa.Super.2002)). The court reasoned:

When considering the totality of the circumstances, it is clear that Officer [Cujdik] had probable cause to believe that the objects he saw were incriminating in nature. The area was well known for pill sales. There were complaints about a pharmacy in the area. Officer [Cujdik] was aware of Officer Wallace's encounter with Boyer and the direct sale that took place between them. He was also aware of the statement by Boyer telling Officer Wallace that he could get more pills and would be right back just prior to entering [[a]ppellant's] vehicle. All of these facts, along with Officer [Cujdik's] experience, make it clear that upon sighting the ... amber bottle he would have found them immediately incriminating.

*Id.*, at 6–7.

Affirming in a published decision, the Superior Court explained the plain view exception to the warrant requirement under the Fourth Amendment to the United States Constitution, as discussed in *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), sets forth the following standard for application of the exception:

It is, of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view; its incriminating character must also be "immediately apparent." ... Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself.

*Commonwealth v. McCree,* 857 A.2d 188, 190 (Pa.Super.2004) (quoting *Horton,* at 136–37, 110 S.Ct. 2301). This standard, therefore, contains three prongs: (1) the police must be at a lawful vantage-point; (2) the incriminating character of the object must be immediately apparent; and (3) the police must have a lawful right of access to the object. The court suggested that although this Court adopted the standard announced in *Horton, see Commonwealth v. Graham,* 554 Pa. 472, 721 A.2d 1075 (1998); *Commonwealth v. McCullum,* 529 Pa. 117, 602 A.2d 313 (1992), subsequent statements of the standard eliminated its third prong, which requires the police to have a lawful right of access to the object. *See Petroll, supra; Commonwealth v. Ellis,* 541 Pa. 285, 662 A.2d 1043 (1995). Observing that such elimination occurred without express acknowledgement, the Superior Court felt constrained to apply the standard as stated in *Petroll* and the later case of *Commonwealth v. Colon,* 777 A.2d 1097 (Pa.Super.2001); neither referenced the third prong. More specifically, the court stated that *Petroll* provides there can be no reasonable expectation of privacy for an object in plain view, and *Colon* suggests that, while the police might be prohibited from searching a vehicle once the occupants have been removed, they may nonetheless seize contraband that is in plain view inside the vehicle. *See McCree,* at 191 (quoting *Commonwealth v. Clark,* 802 A.2d 658, 660 (Pa.Super.2002)).

Turning to the facts, the Superior Court emphasized the trial court's finding that Officer Cujdik saw the Xanax pill bottle in plain view, and reasoned that appellant's efforts to hide it under his seat cushion excused the need to secure a search warrant. *Id.* The court found the incriminating nature of the Xanax bottle was immediately apparent in light of the surrounding circumstances; thus, it held the Xanax bottle fell within the plain view exception. *Id.* The court also found the police were at a lawful vantage-point when they saw the two bottles in the door pocket, and the incriminating nature of those bottles was likewise immediately apparent. *Id.,* at 192.

We granted allowance of appeal to review the narrow issue of whether the Superior Court improperly disregarded *Gra-*

*ham, supra,* and *McCullum, supra,* when it opined our decision in *Petroll, supra,* allowed police to enter the Pontiac without a warrant.[7]

Both the Fourth Amendment to the United States Constitution[8] and Article I, § 8 of the Pennsylvania Constitution[9] protect the people from unreasonable searches and seizures. *In the Interest of D.M.,* 566 Pa. 445, 781 A.2d 1161, 1163 (2001). The Fourth Amendment and Article I, § 8 have long been interpreted to protect the people from unreasonable government intrusions into their privacy. *United States v. Chadwick,* 433 U.S. 1, 7, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Commonwealth v. Shaw,* 476 Pa. 543, 383 A.2d 496, 499 (1978). "The reasonableness of a governmental intrusion varies with the degree of privacy legitimately expected and the nature of the governmental intrusion." *Shaw,* at 499 (collecting cases).

The similarities in language of the Fourth Amendment and Article I, § 8 do not demand identical interpretation of the two provisions. *Commonwealth v. Waltson,* 555 Pa. 223, 724 A.2d 289, 291 (1998). Article I, § 8 can provide no less protection than what the Fourth Amendment requires, but it may establish greater protections than the Fourth Amendment. *Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769, 771–72 (1996). Article I, § 8 has been held to create an implicit right to privacy which extends to areas where one has a "reasonable expectation of privacy." *Commonwealth v.*

---

**7.** The Superior Court also determined there was sufficient evidence to sustain appellant's conviction; the sufficiency of the evidence is not at issue here.

**8.** *See* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").

**9.** *See* Pa. Const. art. I, § 8 ("The people shall be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.").

*Blystone,* 519 Pa. 450, 549 A.2d 81, 87 (1988). The notion of privacy in Article I, § 8 is greater than that of the Fourth Amendment. *Waltson,* at 292 (citing *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 899 (1991) ("Article I, [§ ] 8 ... may be employed to guard *individual privacy* rights against unreasonable searches and seizures more zealously than the federal government does under the [United States] Constitution . . . .") (emphasis in original)). Thus, Pennsylvania courts, in comparison to federal courts, have given greater weight to an individual's privacy interests when balancing the importance of privacy against the needs of law enforcement. *Commonwealth v. White,* 543 Pa. 45, 669 A.2d 896, 902 (1995); *see also Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457, 468 (1983) ("Article I, [§ ] 8 . . ., as consistently interpreted by [Pennsylvania courts], *mandates greater recognition of the need for protection from illegal government conduct offensive to the right of privacy.*") (emphasis in original).

A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions. *Horton,* at 134 n. 4, 110 S.Ct. 2301 (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *United States v. Ross,* 456 U.S. 798, 824–25, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)); *see also Petroll,* at 998. "The 'plain view' doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable, but this characterization overlooks the important difference between searches and seizures." *Horton,* at 133, 110 S.Ct. 2301 (footnotes omitted). "A search [under the Fourth Amendment] compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." *Id.* (citing *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). *Horton* addressed this distinction in relation to the plain view doctrine:

> If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. . . . A seizure of the article, however, would obviously invade the

owner's possessory interest.... If "plain view" justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches.

*Id.,* at 133–34, 110 S.Ct. 2301 (citations omitted).

*Horton* established the standard for evaluating the constitutionality of seizures made pursuant to the plain view exception to the warrant requirement under the Fourth Amendment. *See id.,* at 136–37, 110 S.Ct. 2301; *see also Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). That test includes a determination of whether the police have a lawful right of access to the object seen in plain view. *Horton,* at 137, 110 S.Ct. 2301; *Dickerson,* at 375, 113 S.Ct. 2130. *Horton* explained the determination regarding whether there is a lawful right of access:

"This is simply a corollary of the familiar principle ... that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Horton,* at 137 n. 7, 110 S.Ct. 2301 (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 468, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)) (internal citations omitted). In *Graham,* we followed similar United States Supreme Court precedent:

" '[P]lain view' " provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. " 'Plain view' is perhaps better understood, therefore, not as an independent 'exception' to the warrant clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be."

*Graham,* at 1079 (quoting *Texas v. Brown,* 460 U.S. 730, 738–39, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). "Therefore, under the Fourth Amendment, an officer may not seize contraband in plain view unless a prior justification provided the officer a lawful 'right of access to the item.' " *Id.* (citing *Brown,* at 738, 103 S.Ct. 1535).

The Fourth Amendment requires a federal constitutional threshold determination of whether the police had a lawful right of access to the contraband seen in plain view. *Horton,* at 137, 110 S.Ct. 2301; *see also Dickerson,* at 375, 113 S.Ct. 2130; *Brown* at 738, 103 S.Ct. 1535; *Commonwealth v. Jackson,* 548 Pa. 484, 698 A.2d 571, 573 (1997); *Matos,* at 771–72. *McCullum* and *Graham's* adoption of the *Horton* test, including a determination of whether the police have a lawful right of access to the object seen in plain view, was therefore proper. We therefore hold under both the Fourth Amend-ment and Article I, § 8, the plain view exception to the warrant requirement requires a determination of whether the police have a lawful right of access to the object seen in plain view.

While *Ellis* and *Petroll* did not specifically reference whether the police must have a lawful right of access to the object seen in plain view, their analysis was not necessarily inconsistent with *McCullum* and *Graham,* as there are critical factual distinctions between the cases.

In *McCullum,* the police asked McCullum's girlfriend if they could enter her apartment to look for McCullum; she consented, and the police found McCullum there. *McCullum,* at 320. McCullum agreed to accompany the police to the police station for questioning concerning a recent murder, when a detective noticed blood stains on McCullum's shoes and seized them. *Id.* We concluded the warrantless seizure of McCullum's shoes was proper under the plain view exception because the police were given consent to enter the apartment, and the incriminating character of the shoes was immediately apparent—McCullum was seen near the murder scene and bloody shoe prints were found there. *Id.* Thus, prongs one and two were met. Regarding the lawful access prong, we

determined allowing McCullum to wear the shoes to the police station could contaminate the evidence. *Id.,* at 320. Thus, we implicitly recognized exigent circumstances met the third prong, giving the police a right of access to the shoes. *See generally Commonwealth v. Roland,* 535 Pa. 595, 637 A.2d 269, 271 (1994) (likelihood evidence will be destroyed if police take time to obtain warrant is factor to consider when determining if exigent circumstances allow warrantless search and seizure).

In *Graham,* a police officer conducted a lawful *Terry* stop [10] of Graham on a public street. *Graham,* at 1076–78. The officer patted Graham's back pockets and felt what he believed was a Lifesavers Holes candy container. *Id.,* at 1076. The officer shined his flashlight into the pocket and noticed such a container which appeared to contain crack cocaine. *Id.,* at 1076–77. We determined the officer's flashlight search extended beyond what *Terry* permits, as the officer admitted his pat-down search revealed no evidence of weapons. *Id.,* at 1080. Once the officer's search revealed no evidence of weapons, there was no independent justification to extend the search, *i.e.,* shine the flashlight into the pocket. *Id.* The first prong not being met, the seizure was improper.

In *Ellis,* the police responded to a reported burglary at a business. *Ellis,* at 1045. While en route, the officers stopped a vehicle fitting the description of the vehicle seen leaving the burglary scene. *Id.* The police ordered Ellis, who was driving, out of the vehicle and patted him down. *Id.* The police then searched the passenger compartment of the vehicle for weapons and noticed a screwdriver on the floorboard behind the driver's seat, which the police did not seize. *Id.* As the stop was lawful, the first prong was met. Another officer arrived, who had been at the scene and observed pry marks on the door of the burglarized business, meeting the second prong. *Id.,* at 1045–46. After a witness stated he was 85% sure Ellis's vehicle was the one he saw leaving the burglary, the

10. Police may briefly detain, and frisk for weapons, individuals when there is reasonable suspicion that criminal activity is afoot. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

police seized the screwdriver. *Id.*, at 1046. We determined the detention was lawful and never rose to an arrest, *id.*, at 1048–49, and the police had probable cause to believe the screwdriver had been used in the burglary; thus, the seizure of it from the automobile was lawful, *id.*, at 1050, the third prong being satisfied.

In *Petroll*, a police officer responded to a multi-vehicle accident. *Petroll*, at 997. Petroll's tractor-trailer had hit another vehicle, and created a multi-vehicle accident that killed three people. *Id.*, at 996. The officer approached the tractor-trailer, which was facing the roadway's median and on an incline, to assure the emergency brake was set. *Id.*, at 997. When the officer got within three to five feet of the truck, he observed a radar detector attached to the dashboard, which the officer knew violated a federal law prohibiting commercial drivers from using or possessing radar detection devices. *Id.* The officer entered the truck and set the emergency brake. *Id.* The radar detector was seized after the truck was impounded. *Id.*, at 999. Again, the officer was lawfully in the truck, saw an illegal object, and seizure occurred after impounding.

 In the latter two cases, seizure was not from a person but from a vehicle. For Fourth Amendment purposes, the police may conduct a warrantless search of a vehicle where probable cause exists. *Carroll v. United States*, 267 U.S. 132, 147–56, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Even where a vehicle is essentially seized and immobilized, the Fourth Amendment does not preclude a warrantless search of it if probable cause exists. *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). A warrantless search of a vehicle is reasonable under the Fourth Amendment because of the mobility of a vehicle, *Carroll*, at 153, 45 S.Ct. 280 and the reduced expectation of privacy an individual has in a vehicle's contents. The United States Supreme Court explained:

> One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal ef-

fects.... It travels public thoroughfares where both its occupants and its contents are in plain view.

*Chadwick,* at 12, 97 S.Ct. 2476 (quotation omitted).

The Commonwealth argues we should adopt the federal automobile exception under Article I, § 8. Constitutional protections are applicable to one's vehicle under Article I, § 8. *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101, 106 (1978). We have not adopted the full federal automobile exception under Article I, § 8, *id.,* and decline to overrule that longstanding precedent today, especially because that issue is not specifically before us, but ancillary to the issue we are resolving.

Nevertheless, we have adopted a limited automobile exception under Article I, § 8. "While many in our society have a great fondness for their vehicles, it is too great a leap of logic to conclude that the automobile is entitled to the same sanctity as a person's body." *Commonwealth v. Rogers,* 578 Pa. 127, 849 A.2d 1185, 1191 (2004); *see also Holzer,* at 106 (expectation of privacy in one's vehicle significantly less than in one's home or office); *Commonwealth v. Mangini,* 478 Pa. 147, 386 A.2d 482, 487 (1978) (same). We have described two reasons why exigent circumstances allow a warrantless search or seizure of a vehicle under Article I, § 8:(1) a vehicle is mobile and its contents may not be found if the police could not immobilize it until a warrant is secure; and (2) one has a diminished expectation of privacy with respect to a vehicle. *Holzer,* at 106. Thus, even though privacy protections are implicated under Article I, § 8, the heightened privacy concerns involved in a seizure from an individual's person are not present where an object is seized from a vehicle.

We have allowed warrantless seizures "where police do not have advance knowledge that 'a *particular* vehicle carrying evidence of crime would be parked in a *particular* locale, ... the exigencies of the mobility of the vehicle and of there having been inadequate time and opportunity to obtain a warrant rendered the search [without a warrant] proper.' " *Commonwealth v. Rodriguez,* 526 Pa. 268, 585 A.2d 988, 991

(1991) (citing *Baker*, at 1383). Conversely, when the police have ample advance information that a search of an automobile is likely to occur in conjunction with apprehension of a suspect, a warrant has been held to be required before the automobile may be searched. *Commonwealth v. Ionata*, 518 Pa. 472, 544 A.2d 917, 920–21 (1988).

In *Ellis*, we did not mention the lawful access prong of the plain view doctrine. While we did not discuss whether the police had a right to lawfully access the screwdriver, it appears that under the Fourth Amendment, the automobile exception to the warrant requirement granted the police the right to access the interior of the vehicle where they seized the screwdriver, as there was probable cause to believe its occupants committed the burglary; thus, we determined there was probable cause to seize the screwdriver. *Ellis*, at 1050. Under Article I, § 8, the limited automobile exception to the warrant requirement granted the police the right to access the interior of the vehicle, as the police did not have advance notice that the vehicle they stopped was involved in the burglary. Based on the quickly evolving investigation into the burglary and the significantly diminished expectation of privacy in the vehicle, a warrantless search of the vehicle was lawful and the police could seize the screwdriver, seen in plain view. As the police had a right to lawfully access the vehicle for a search, the additional information that a witness was 85% sure the vehicle was the one seen leaving the burglary scene created probable cause, independent of the existence of the screwdriver, to believe the vehicle's occupants committed the burglary and the screwdriver was used in such burglary.

In *Petroll*, we also did not mention the lawful access prong of the plain view doctrine. We did, however, state "some searches without warrants do not violate state or federal constitutional privacy rights." *Id.*, at 999 (citing *Colorado v. Bertine*, 479 U.S. 367, 371–72, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987)). While we did not discuss whether the police had a right to lawfully access the radar detector, it appears that under the Fourth Amendment the inventory search exception to the warrant requirement granted the police the right to

access the radar detector when the tractor-trailer was impounded, *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and that under Article I, § 8, the police had a right to access the radar detector if its inventory seizure was not conducted as part of a criminal investigation. *White*, at 903; *see also Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140, 144–45 (1976).

Turning to a review of the Superior Court's decision here, the appellate standard of review of suppression rulings is well-settled. We are bound by the factual findings of the suppression court which find support in the record, but we are not bound by the court's conclusions of law. *Commonwealth v. Templin*, 568 Pa. 306, 795 A.2d 959, 961 (2002).

Here, the police lawfully seized all three pill bottles from the Pontiac under the plain view exception. Officer Cujdik lawfully approached the driver's side of the Pontiac, as it was parked on a public street, and was on the same public street when he observed the other two pill bottles in the Pontiac's door pocket. Thus, he was lawfully present when he saw appellant place the amber pill container under his seat cushion, and when he saw the pill bottles in the door pocket. The first prong is met.

When considering the totality of the circumstances, the object Officer Cujdik saw was immediately incriminating in nature. The area was well known for illegal prescription drug sales, and Officer Cujdik was aware of Officer Wallace's encounter with Boyer and the direct sale that took place between them. He was also aware of Boyer's statement to Officer Wallace, made just prior to when Boyer entered appellant's Pontiac, that he could get more pills and that he would be right back. All of these facts, along with Officer Cujdik's experience, make it clear that the three pill bottles were incriminating in nature, meeting the second prong.

Finally, even without Officer Cujdik's observation of the pill bottles, the remaining information above created probable cause to search the interior of the Pontiac for evidence of

a drug sale. Since there was no advanced warning that appellant or his Pontiac would be the target of a police investigation, the limited automobile exception applies here. Thus, Officer Cujdik lawfully accessed the interior of Pontiac under this exception, and while conducting a search, seized all three pill bottles. In sum, access to the Pontiac was authorized by the limited automobile exception, and seizure of the pill bottles was authorized by the plain view exception.[11]

Therefore, as stated, we hold under both the Fourth Amendment and Article I, § 8, the standard for the plain view exception to the warrant requirement requires a determination of whether the police have a lawful right of access to the object seen in plain view. We further hold the limited automobile exception under Article I, § 8 may, depending on the circumstances of each case, serve as the basis of the lawful right to access an object seen in plain view inside a vehicle.

Order affirmed. Jurisdiction relinquished.

Justice SAYLOR and FITZGERALD join the opinion.

Justice CAPPY files a concurring opinion in which Justice BAER and Justice BALDWIN join.

Justice CASTILLE files a concurring opinion.

Chief Justice CAPPY, concurring.

I concur in the result reached in the lead opinion to affirm the denial of Appellant Henry McCree's suppression motion. Furthermore, I join in the opinion's clarification that the test regarding the plain view exception to the warrant requirement as expressed by the United States Supreme Court in *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), is the law in Pennsylvania. I write separately, however, as I reach the result by a different legal construct than the lead opinion with respect to the final prong of this test.

11. Under the Fourth Amendment's automobile exception, the police could have searched the vehicle without a warrant and seized the pill bottles. *Chambers,* at 51, 90 S.Ct. 1975.

In sum, the plain view exception to the warrant requirement allows for warrantless *seizures* under limited circumstances. As articulated in *Horton*, prior to the finding of a valid warrantless seizure of an item pursuant to the plain view exception: (1) the police must not violate the Fourth Amendment in arriving at the location from which the item could be viewed; (2) the item must be in plain view; (3) the incriminating character of the item must be immediately apparent; and (4) the police must have a lawful right of access to the item itself.[1] *Horton*, U.S. 496 at 136–137. Like many aspects of Fourth Amendment jurisprudence, inquiries regarding satisfaction of the plain view exception to the warrant requirement are highly fact intensive.

In this matter, the record offers that Philadelphia police officer Stacey Wallace had made an initial purchase of Xanax from an individual named Boyer. Officer Wallace asked Boyer if he could obtain more drugs to which he indicated that he could. Boyer walked to a blue Pontiac, entered and sat in the front passenger seat of the automobile, and joined McCree, who was sitting in the driver seat of the automobile. Officer Wallace relayed this information to her back-up, Officers Cujdik and Kovacs, and instructed them to stop a male inside the Pontiac. Trial Court Opinion at 2–3; N.T. February 6, 2003 at 9–12.

The officers approached the Pontiac, Officer Kovacs on the passenger side of the vehicle and Officer Cujdik on the driver side. As the officers identified themselves to the two men in the vehicle, Officer Cujdik saw McCree place an orange/amber pill bottle underneath the seat cushion on which he was sitting. Officer Cujdik opened the driver-side door and asked

---

1. The United States Supreme Court officially adopted the plain view exception to the warrant requirement in its seminal decision in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)(plurality). The *Coolidge* Court permitted the warrantless seizure of an item when: (1) there was a prior justified intrusion by the police; (2) the item was found in plain view; (3) it was immediately apparent that the object is in some fashion incriminating; and (4) the discovery of the item was inadvertent. Nineteen years later in *Horton*, the federal High Court refined the requirements of the doctrine by eliminating the inadvertency prong.

McCree to step outside the vehicle. As Officer Cujdik was removing McCree from the vehicle, he also recovered the pill bottle from under the seat cushion. Trial Court Opinion at 3; N.T. February 6, 2003 at 15–17. When he recovered the pill bottle, Officer Cujdik could see inside the bottle and saw that the bottle contained Xanax. Trial Court Opinion at 3; N.T. February 6, 2003 at 19.[2]

As to the first prong of the *Horton*, test, there is no violation of the Fourth Amendment in arriving at the viewing location. Officer Cujdik observed the orange/amber pill bottle from a non-constitutionally protected area, i.e., a public street. Thus, the first prong is satisfied.

As to the second prong, I agree with the lead opinion that the pill bottle was in plain view when observed by Officer Cujdik. Furthermore, the incriminating nature of the orange/amber pill bottle was immediately apparent, satisfying the third prong of the *Horton* test.

The fourth prong of the *Horton* test concerns the lawful right of access to the evidence. This prong builds upon the concept that even though it is immediately apparent to police officers that they have contraband before them, and they viewed this evidence from a lawful vantage point, they are not authorized to seize the evidence. Rather, the police officer must have some legal justification or lawful right of access to make the seizure.[3]

**2.** After taking McCree to the rear of the automobile, Officer Cujdik returned to the open door, discovered two additional pill jars in the pocket of the door, and recovered the two other pill jars. Trial Court Opinion at 3; N.T. February 6, 2003 at 21–22. Officer Cujdik opened the two bottles and found OxyContin and Percocets. Trial Court Opinion at 3; N.T. February 6, 2003 at 16. Yet, McCree was only charged and convicted of possession with intent to deliver the Xanax which was found in the orange/amber pill bottle that McCree had secreted under his seat cushion. Trial Court Opinion at 6–7; N.T. February 6, 2003 at 39–40, 42. Thus, the propriety of the seizure of the pill jars from the driver side door pocket is not at issue in this appeal. That being the case, I believe that a discussion of the seizure of the pill jars should wait until that issue is squarely before our Court.

**3.** As noted by Judge Moylan in his article on the plain view exception: "Seeing something in open view does not, of course, dispose, ipso facto, of the problem of crossing constitutionally protected thresholds. Those

The lead opinion invokes the automobile exception under both the United States Constitution and the Pennsylvania Constitution to satisfy the lawful right of access requirement. As to the justification under Article I, § 8 of the Pennsylvania Constitution, the lead opinion declines the Commonwealth's offer to adopt the federal automobile exception as the law in our Commonwealth, but contends that we have adopted a "limited automobile exception" under Article I, § 8. The lead opinion goes on to apply this "limited automobile exception" in addressing the lawful right of access prong, and concludes that because the officer had probable cause to search the automobile, the police officer could lawfully access the interior of the automobile under the automobile exception.

I part from the approach taken in the lead opinion at this juncture for two reasons. First, the automobile exception in Pennsylvania is the subject of continued controversy in our Commonwealth and in its discussion of the "limited automobile exception" under Pennsylvania law, the lead opinion fails to acknowledge or critically discuss the differing viewpoints concerning the existence or parameters of such an exception to the warrant requirement. *See Commonwealth v. Perry*, 568 Pa. 499, 798 A.2d 697 (2002) (Cappy, J. Opinion Announcing the Judgment of the Court), (Castille, J., concurring), (Saylor, J., Concurring), (Nigro, J., dissenting); *see also* Commonwealth Brief at 14 ("[T]he state of this Court's automobile exception jurisprudence has been the subject of internal and external question.").

Second, I believe it unnecessary to delve into the contours of the automobile exception under Article I, § 8, as the parameters of that exception to the warrant requirement are not directly before us. Rather, I would find that the lawful access prong is satisfied by the search incident to arrest exception to the warrant requirement.

who thoughtlessly over-apply the plain view doctrine to every situation where there is a visual open view have not yet learned the simple lesson long since mastered by old hands at the burlesque houses, 'You can't touch everything you can see.' " Judge Charles E. Moylan, Jr., *The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle*, 26 Mercer L.Rev. 1047, 1096 (1974).

In Pennsylvania, an exception to the constitutional mandate that a search or a seizure must be pursuant to a valid warrant has been recognized to permit a warrantless search incident to an arrest. Our Court has stated that an arrest is "any act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest...." *Commonwealth v. Rodriquez*, 532 Pa. 62, 614 A.2d 1378, 1384 (1992) (citation omitted). When a police officer makes an arrest, he or she may conduct "a search of an arrestee's person and the area within an arrestee's immediate control as a matter of course because of the ever-present risk in an arrest situation that an arrestee may seek to use a weapon or to conceal or destroy evidence." *Commonwealth v. Timko*, 491 Pa. 32, 417 A.2d 620, 622 (1980).

Here, I believe that under the totality of the circumstances, the police officers had probable cause to arrest McCree; they were entitled to remove McCree from the automobile for purposes of effecting this arrest; and in arresting McCree, the police officers were permitted to search McCree's person and the area within his immediate control. *Timko*. Therefore, as Officer Cujdik was removing McCree from the automobile, he had a lawful right to access the immediate interior of the automobile as part of a search incident to the valid arrest. As such Officer Cujdik properly seized the pill bottle from under the seat cushion pursuant to the plain view exception to the warrant requirement. As the Commonwealth satisfied the *Horton* test under these circumstances, I believe that McCree's motion to suppress was properly dismissed.[4,5]

4. McCree does not contend that his hiding of the pill bottle underneath the seat cushion after it was observed while in plain view should change the legal construct by which we view the police conduct from a plain view analysis to a search analysis. Indeed, it would appear that such action on the part of a defendant does not alter the plain view approach.

5. Not only do the factual findings of the trial court support lawful access to seize the contraband pursuant to the plain view doctrine due to the search incident to an arrest exception, such an approach fits comfortably with the evolution of the plain view doctrine which emerged as an offshoot from the search incident to arrest exception to the warrant requirement. *Moylan*, at 1050–66.

For the reasons set forth above, I concur in the result reached by the majority.

Justice BAER and Justice BALDWIN join this concurring opinion.

Justice CASTILLE, concurring.

I join the learned Majority Opinion with the exception of its discussion of *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978) and the status and contours of the "automobile exception" to the warrant requirement under Article I, Section 8 of the Pennsylvania Constitution. Respecting the explication and application of the automobile exception in this case, I concur in the result.

As the Chief Justice notes in his Concurring Opinion, the status of the automobile exception under Article I, Section 8 is uncertain, and that uncertainty was the subject of a number of separate opinions in *Commonwealth v. Perry*, 568 Pa. 499, 798 A.2d 697 (2002), a case which did not produce a majority opinion.[1] My Concurring Opinion in *Perry* engaged in an extensive analysis of this Court's precedent concerning the automobile exception, distinguishing what was clear and binding authority and what was not binding or persuasive, and I set forth my own views on the proper approach under Article I, Section 8. There is no need to repeat that analysis here. It is enough to state, for present purposes, that: (1) if this Court were to squarely face the question of what is demanded by Article I, Section 8 respecting automobile searches, I remain inclined to hold that our approach should be coextensive with the federal approach under the Fourth Amendment; and (2) failing that square joinder of the issue, it is my view that this Court's existing Article I, Section 8 *holdings* in this area (which do not include a state constitutional analysis under

1. In *Perry*, Mr. Justice Cappy (now Chief Justice) filed the Opinion Announcing the Judgment of the Court, which was joined by no other Justice; this author filed a Concurring Opinion, which was joined by Madame Justice Newman; Mr. Justice Saylor filed a separate Concurring Opinion; and Mr. Justice Nigro filed a Dissenting Opinion, which was joined by Mr. Justice Zappala. Former Chief Justice Flaherty did not participate in the decision.

*Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991)), at most suggest that, if Article I, Section 8 requires an exigency to justify a probable cause-based warrantless entry of a vehicle (probable cause is the only federal requirement), all that is required is that the probable cause "arose unexpectedly, *i.e.,* in circumstances that prevented police from securing a warrant before probable cause to search the vehicle arose." *Perry,* 798 A.2d at 717 (Castille, J., concurring).[2]

In this case, probable cause respecting the vehicle did arise unexpectedly as police were engaged in an investigation of an unfolding retail illegal drug operation. Moreover, in such circumstances, it was not reasonably practicable to expect police to secure a warrant prior to searching the vehicle. And, moreover, there is no reason to believe that police manipulated the circumstances in order to subvert the warrant requirement. In my view, then, even under the most expansive reading of this Court's Article I, Section 8 precedent, the automobile search here, which was supported by probable cause and an exigency beyond the mobility of the vehicle, was lawful.

In its ultimate resolution of this case, the Majority applies an automobile exception approach which I believe is consistent with my understanding of the most that can be gleaned from the holdings in our precedents, as discussed in my Concurring Opinion in *Perry.* Thus, I concur in the Majority Opinion respecting the automobile exception, and I join it in all other respects.

---

**2.** In his separate concurrence in *Perry,* Justice Saylor articulated his view of the exigency requirement emerging from the cases in slightly broader terms: "this Court has indicated, in the automobile paradigm, that sufficient exigency is present where, because of the attending circumstances, it was not reasonably practicable for the police to obtain a warrant." 798 A.2d at 720 (Saylor, J., concurring).