# Commonwealth v. Jiggetts

C.P. of Lehigh County, nos. CR-1591-2010, CR-1592-2010.

*Jeffrey S. Dimmig, deputy district attorney,* for Commonwealth.

*Robert Long,* for defendant Jiggetts.

*Karen J. Schular,* for defendant Cisco.

STEINBERG, *J.,* August 11, 2010—The defendants, Hakeem Jiggetts and Emmanuel Cisco, are charged with possession with intent to deliver a controlled substance, possession of a controlled substance and criminal conspiracy (two counts each). Both defendants were detained a short time after a can of Old English beer was discarded from the moving vehicle they occupied. During that detention, a clear plastic sandwich bag with cocaine was discovered in the vicinity of the center console of the vehicle.

Motions to suppress were filed on behalf of both defendants, contesting the stop of the Gold Chevrolet Trailblazer, and the subsequent discovery of the "fruits" of the stop, the cocaine. A "motion to sever from co-defendants" was also filed on behalf of Hakim Jiggetts, contending that a severance is appropriate because the defenses of each defendant are "antagonistic." In other words, each defendant intends to claim at trial that the cocaine was the co-defendant's. A hearing was held on these motions on July 28, 2010.

At the hearing, Detective Matthew Karnish, a member of the vice and intelligence unit of the Allentown Police Department, testified that a Gold Chevrolet Trailblazer caught his eye when it "abruptly" changed lanes without signaling in the 300 block of Seventh Street. He decided to follow the vehicle, and did so until the Trailblazer parked at Valenia Park, which is located at 500 Union Street in Allentown. The Trailblazer, which was the only vehicle in the parking lot, remained there for five-seven minutes. The only activity witnessed by Detective Karnish was Hakim Jiggetts pouring beer out of the window.

The Trailblazer departed the park with Detective Karnish maintaining surveillance. When the Trailblazer reached the vicinity of 6th and Union Streets, he observed a can of the Old English come out of the passenger side window. Detective Karnish called for a marked police unit to stop the Trailblazer, but none was available. As a result, Detective Karnish continued his surveillance as the vehicle stopped at a neighborhood market in the vicinity of 10th and Liberty Streets. No marked units were available as yet, and so Detective Karnish continued to follow the Trailblazer. A decision was made to stop the vehicle after the Trailblazer made a series of counter-surveillance movements down small alleyways.

The Trailblazer was blocked by responding unmarked vehicles of the vice and intelligence unit as it attempted to navigate Russell Street. Detective Karnish and Detective Jason Krasley then approached the Trailblazer, and when Emmanuel Cisco failed to comply with Detective Krasley's commands, he was removed from the vehicle at gunpoint. Mr. Jiggetts, the driver, also exited the vehicle.

Detective Krasley peered into the Trailblazer and observed a clear plastic sandwich bag with an "off-white rock like substance" later determined to be cocaine. The bag was partially tucked between the passenger seat and center console, but Detective Krasley could observe what, in his experience, he believed was cocaine. The cocaine was retrieved and the defendants arrested.

## DISCUSSION

The defendants contend that it was inappropriate and unconstitutional for vice squad members to stop a vehicle for littering. Specifically, it is alleged that the stop of the Trailblazer was a pretext for a drug investigation. Detective Kamish may have been conducting a drug investigation, but as he conducted surveillance, he observed a littering offense. He was not required to disregard the beer can being discarded from the Trailblazer, but was entitled to take action. The littering offense properly served as a basis to stop the Trailblazer, preferably by a uniformed officer. However, when one was not available, then by the vice officers.

A technical violation of the Vehicle Code or a municipal ordinance for littering, "legitimizes a stop, even if the stop is merely a pretext for some other investigation." *Arkansas v. Sullivan,* 532 U.S. 769, 772 (2001) quoting *Whren v. United States,* 517 U.S. 806, 812-13 (1996); *United States v. Robinson,* 414 U.S. 218 (1973); *United States v. Mosley,* 454 F.3d 249, 252 (3d Cir. 2006); *U.S. v. Walker,* 2010 WL 2572513 (W.D. Pa.); *U.S. v. Owens,* 2010 WL 126170 (M.D. Pa.). Additionally, the subjective motivations of the officers, "play no role in ordinary probable-cause Fourth Amendment analysis." *Whren,* 517

U.S. at 813; *U.S. v. McNeil,* 2010 WL 235131 *4 (M.D. Pa.); *Commonwealth v. Chase,* 599 Pa. 80, 102, 960 A.2d 108, 120 (2008) ("[I]f police can articulate a reasonable suspicion of a Vehicle Code violation, a constitutional inquiry into officer's motive for stopping vehicle is unnecessary."). Furthermore, the actions of police officers have been deemed reasonable even though their action violated regulations limiting the authority of plainclothes officers in unmarked vehicles. "We thought it obvious that the Fourth Amendment's meaning did not change with local law enforcement practices—even practices set by rule. While those practices 'vary from place to place and from time to time' Fourth Amendment protections are not 'so variable' and cannot 'be made to turn upon such trivialities.'" *Virginia v. Moore,* 553 U.S. 164, 172 (2008), quoting *Whren,* 517 U.S. at 815.

The flight of the Old English beer can violated the Vehicle Code, the municipal ordinances of the City of Allentown, and the Crimes Code. The Vehicle Code states in part:

"[n]o person shall throw or deposit, upon any highway or upon any other public or private property without the consent of the owner thereof or into the or on the waters of this Commonwealth, from a vehicle, any waste paper, sweepings, ashes, household waste, glass, metal, refuse or rubbish, or any dangerous or detrimental substance." [1]

The pertinent municipal ordinance of the City of Allentown states; "[n]o persons shall throw, scatter, deposit or sweep litter, or cause litter to be on any public place, such as a street, sidewalk, park or playground, nor

---

1. 75 Pa.C.S. §3709(a).

onto any private property, except in authorized receptacles."[2] The enforcement of this section is the responsibility of "police officers . . .,"[3] and is not limited to any branch of the police department. Finally, a person under similar circumstances may be guilty of a summary offense under the Crimes Code for scattering rubbish.[4]

Not only did the defendant potentially violate multiple littering statutes or ordinances, but did so in the presence of a police officer, Detective Karnish. Their actions permitted Detective Karnish to initiate proceedings[5] for the summary offense of littering, regardless of the nature of his investigation. It is the defendants misfortune that they possessed cocaine, but their attempt to shield themselves by asserting perceived constitutional roadblocks is unavailing.

For the foregoing reasons, the defendants' motions to suppress are denied.[6]

---

2. City of Allentown codified ordinances, article 720, neighborhood improvement ordinance §725.03, deposit of litter prohibited.

3. *Id.,* section 720.94A.

4. 18 Pa.C.S. §6501.

5. Pa.R.Crim.P. 400 et seq.

6. A valid warrantless search of the vehicle was also permissible because the cocaine was in plain view. The plain view doctrine permits a valid warrantless search where: (1) the police have not violated the Fourth Amendment in arriving at the location from which the item could be viewed; (2) the item is in plain view; (3) the incriminating character of the item is immediately apparent; and (4) the police have a lawful right of access to the item itself. *Horton v. California,* 496 U.S. 128, 133, 136-37 (1990); *Commonwealth v. Jones,* 988 A.2d 649, 656 (Pa. 2010); *Commonwealth v. McCree,* 592 Pa. 238, 245, 924 A.2d 621, 625 (2007). The slop of the Trailblazer, as previously explained. was lawful, the cocaine was partially visible and the nature of the substance was immediately apparent to the investigating officer, and the police were lawfully in a position to access the cocaine.

## 1. *Motion to Sever*

The defendant, Hakim Jiggetts, also filed a motion to sever, seeking to have this case separated from the case of his co-defendant in case number 1592-2010. The defense contends that a severance is justified because the defendant will present a defense that will be conflicting and antagonistic to his co-defendant.

The standard for reviewing a motion for severance has been set forth in *Commonwealth v. Hetzel,* 822 A.2d 747, 863 (Pa. Super. 2003):

"The decision to grant or deny a motion for severance is committed to the sound discretion of the trial court, reversal of which is proper only in the event of an abuse of that discretion. While joint trials are preferred in those cases in which conspiracy is charged and the evidence against one actor is the same or similar to that presented against the other actor, the law is also clear that severance is required whenever co-defendants intend to present antagonistic defenses. However, 'the mere fact that there is hostility between the defendants, or that one may try to save himself at the expense of another, is in itself not sufficient grounds to require separate trials.'" (internal citations omitted)

Accordingly, a severance may be granted if the defendants are prejudiced by being tried together.[7] However, it is the real potential for prejudice from a joint trial which would require a severance; speculation that prejudice may result is not enough. *Hetzel,* 822 A.2d at 763.

---

7. Pa.R.Crim.P. 583.

"[T]he fact that defendants have conflicting versions of what took place, or the extents to which they participated in [the crime], is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together. . . . Defenses become antagonistic only when the jury, in order to believe the essence of testimony offered on behalf of one defendant, must necessarily disbelieve the testimony of his co-defendant." *Commonwealth v. Housman,* 986 A.2d 822, 834 (Pa. 2009), quoting *Commonwealth v. Chester,* 526 Pa. 578, 590, 587 A.2d 1367, 1373 (1991).

No prejudice has been demonstrated in this case.

Here, both defendants are charged with the same crimes arising out of the same events. The testimony from the preliminary hearing reveals that the same witnesses and evidence would be required for both trials if severance was granted, including testimony from Detectives Karnish and Krasley and evidence regarding the cocaine. In addition, the fact that one or both defendants may try to exculpate themselves by inculpating the other defendant does not provide sufficient grounds for severance. *Commonwealth v. Brown,* 592 Pa. 376, 401, 925 A.2d 147, 161 (2007). Lastly, as we noted above, joint trials are preferred when defendants have been charged with conspiracy. See *Commonwealth v. King,* 554 Pa. 331, 721 A.2d 763 (1998) (severance not warranted, even though both defendants attempted to place blame on the other defendant, because defendants were charged with conspiracy, the crimes arose from the same events, and the witnesses at trial were the same). For all these reasons, in the exercise of this court's discretion, the motion for severance is denied.

## ORDER

And now, August 11, 2010, upon consideration of the defendants pretrial motions, and after hearings thereon; it is hereby ordered that the pretrial motions are denied.