J-S78006-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KRISTEN L. MARTIN | |
| Appellant | No. 1048 MDA 2014 |

Appeal from the Judgment of Sentence April 14, 2014
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0002144-2012

BEFORE:  GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED FEBRUARY 02, 2015**

Appellant, Kristen L. Martin, appeals from the judgment of sentence entered in the Luzerne County Court of Common Pleas, following her bench trial convictions for possession of a controlled substance and possession of a controlled substance with intent to deliver ("PWID").[1]  We affirm the convictions, vacate the judgment of sentence, and remand for resentencing.

The suppression court's findings of fact set forth the relevant facts of this appeal as follows:

> 1.    Officer Jeffrey Ference, Wilkes-Barre Police Department; Sgt. Robert Orzechowski, Hanover Township Police Department; and Officer Mark Stefanowicz, Hanover Township Police Department, testified on behalf of the Commonwealth.

---

[1] 35 P.S. § 780-113(a)(16), (30).

2.     Officer Ference was assigned to investigate a motor vehicle accident which occurred on June 6, 2012 in the City of Wilkes-Barre.

3.     The subject vehicle was registered to a rental car company.

4.     The driver's license of [Appellant] was located inside the vehicle.

5.     Officer Ference attempted to contact [Appellant] the next day, June 7, 2012, by telephone.

6.     On June 7, 2012, Officer Ference proceeded to [Appellant's] residence located [in Hanover Township].

7.     Upon arrival, Officer Ference spoke with [Appellant] and was invited and allowed inside the residence.  Her boyfriend, Eric Conahan, was also in the residence.

8.     Following a check of the driver's license database, Officer Ference learned that Mr. Conahan was a wanted person.

9.     Mr. Conahan was placed into custody, handcuffed, and seated on a chair in the residence.

10.     At that time, Mr. Conahan was dressed only in boxer shorts.

11.     Mr. Conahan wanted additional clothes and [Appellant] wanted to retrieve some additional clothing for Mr. Conahan and asked Officer Ference for permission to go into the bedroom for clothes.

12.     Officer Ference agreed to accommodate [Appellant's] request and accompanied her into the bedroom, the inside of which was not visible to Officer Ference from his present location inside the residence.

13.     Once in the bedroom, Officer Ference observed [Appellant] grab an item off…the top of a dresser and attempt to put the same in a dresser drawer.

14.     On the dresser, Officer Ference observed what was believed to be marijuana grinders,[2] which he is familiar with due to prior arrests and investigations.

15.     Officer Ference also observed items wrapped in newspaper, which were consistent with the packaging of heroin.

16.     The items were immediately apparent as contraband.

17.     The suspected contraband was left until assistance from the Hanover Township Police Department arrived.

18.     No dresser drawers were opened by Officer Ference, and no search of the bedroom was performed.

19.     Officer Ference stated that he accompanied [Appellant] into the bedroom for his own safety, as the interior of the room was not visible from the area where he initially made contact with [Appellant] and Mr. Conahan, and Mr. Conahan was now known to be a wanted person.

20.     Sgt. Robert Orzechowski, Hanover Township Police Department, responded to the subject residence at the request of the Wilkes-Barre Police Department.

21.     Officer Ference relayed information about his interaction with [Appellant] and Mr. Conahan to Sgt. Orzechowski.

22.     Officer Ference showed Sgt. Orzechowski the bedroom area where the suspected contraband was observed.

23.     The area was secured, and Officer Mark Stefanowicz was contacted for assistance.

_____

[2] At the suppression hearing, Officer Ference testified that a marijuana grinder is a device used to prepare marijuana for smoking.  (N.T. Suppression Hearing, 4/26/13, at 9).

24.     [Appellant] was provided with her constitutional rights pursuant to **Miranda v. Arizona**, 384 U.S. 436 (1966).

25.     [Appellant] signed a rights waiver form in the presence of Sgt. Orzechowski and Officer Stefanowicz.

26.     [Appellant] appeared calm and was cooperative.

27.     [Appellant] signed a permission to search form in the presence of the police officers.

28.     [Appellant] directed the police officers [on] where to search for contraband.

29.     The bedroom area was searched, and heroin and related drug paraphernalia were located in the dresser drawer.

30.     No promises were made to [Appellant] in exchange for her cooperation and consent to search.

31.     Officer Stefanowicz spoke with [Appellant], and she advised that there was money in the bathroom medicine cabinet inside a "cold medicine" box.

32.     $1,043.00 was found in the box.

33.     All contraband was seized.  The suspected drugs field-tested positive for heroin.

34.     [Appellant] was transported to the Hanover Township Police station where she provided a handwritten statement.

35.     [Appellant] admitted to selling heroin and further advised that she buys it from "Wendal" from East Orange, New Jersey, who meets [Appellant] in Wilkes-Barre for the sale/purchase.

36.     [Appellant] stated that she does not use heroin, and all heroin found in the residence belonged to her.

(Findings of Fact and Conclusions of Law, entered June 7, 2013, at 1-4).

The Commonwealth charged Appellant with possession of a controlled substance and PWID. On December 31, 2012, Appellant filed a motion to suppress all evidence obtained as a result of the search. The suppression court conducted a hearing on April 26, 2013. At the hearing, defense counsel summarized Appellant's argument as follows:

> [Appellant] does not feel that the officer had the right to accompany her…to her own bedroom. There is certainly an expectation of privacy in one's home.
>
> *    *    *
>
> [It] violated the Fourth Amendment for [the officer] to be [in the bedroom] and, therefore, the plain view doctrine would be violated, because he has to have a lawful right of access to be where the plain view occurred.

(N.T. Suppression Hearing at 59-60). On June 7, 2013, the court issued its findings of fact and conclusions of law. That same day, the court denied Appellant's suppression motion.

Following a bench trial, the court found Appellant guilty of possession of a controlled substance and PWID. On April 14, 2014, the court conducted Appellant's sentencing hearing. For the PWID conviction, the court sentenced Appellant to three (3) to six (6) years' imprisonment, which included a mandatory minimum term pursuant to 18 Pa.C.S.A. § 7508(a)(7)(ii).[3] Appellant's conviction for possession of a controlled

---

[3] At the sentencing hearing, the Commonwealth explained the applicability of the Section 7508 mandatory minimum as follows:

*(Footnote Continued Next Page)*

substance merged with the PWID conviction for sentencing purposes. Appellant did not file post-sentence motions.

Appellant timely filed a notice of appeal on May 9, 2014. On May 12, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant subsequently complied with the court's order.

Appellant now raises two issues for our review:

> WHETHER [THE] TRIAL COURT ERRED IN FAILING TO SUPPRESS THE PHYSICAL EVIDENCE FOUND IN [APPELLANT'S] APARTMENT AND SUPPRESS THE VERBAL STATEMENTS MADE BY [APPELLANT].
>
> WHETHER THE TRIAL COURT ERRED IN IMPOSING A MANDATORY MINIMUM SENTENCE OF THIRTY-SIX MONTHS IN LIGHT OF THE UNITED STATES SUPREME COURT'S HOLDING IN *ALLEYNE V. UNITED STATES*, [___ U.S. ___, 133 S.CT. 2151, 186 L.ED.2D 314] (2013).

(Appellant's Brief at 1).

In her first issue, Appellant contends she did not invite Officer Ference into her bedroom, and the officer did not possess reasonable suspicion of criminal activity to justify his entry into the bedroom. To the extent Officer

_(Footnote Continued)_ ———————————

> Also, Your Honor, the weight involved here was testified to and supported by expert testimony, and Your Honor found it to have been substantiated. That was 7.9 grams of heroin, and that is punishable by that three to six mandatory minimum.

(N.T. Sentencing Hearing, 4/14/14, at 2).

Ference cited safety concerns as a basis for entering the bedroom, Appellant maintains the officer did not observe "any unusual or suspicious conduct on the part of [Appellant] which would have led him to reasonably believe that [Appellant was] armed and dangerous or that there [were] weapons inside the bedroom." (Appellant's Brief at 6). Even if Officer Ference possessed a reasonable belief that weapons were located inside the bedroom, Appellant claims the officer could have refused her request to retrieve Mr. Conahan's clothing. Under these circumstances, Appellant insists Officer Ference illegally entered her bedroom; thus, the plain view doctrine could not support the officer's seizure of the contraband. Further, Appellant argues that her subsequent consent to search the bedroom amounted to "fruit of the poisonous tree." Appellant concludes the court erroneously denied her suppression motion. We disagree.

We examine this issue subject to the following principles:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> > [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

***Commonwealth v. Williams, H.***, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en*

*banc*) (internal citations and quotation marks omitted).

"Both the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect the people from unreasonable searches and seizures." *Commonwealth v. McCree*, 592 Pa. 238, 246, 924 A.2d 621, 626 (2007) (internal footnotes omitted). "A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article 1, § 8, subject to a few specifically established, well-delineated exceptions." *Id.* at 247, 924 A.2d at 627. One exception to the warrant requirement is the "protective sweep," which allows for "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Commonwealth v. Taylor*, 565 Pa. 140, 149, 771 A.2d 1261, 1267 (2001), *cert. denied*, 534 U.S. 994, 122 S.Ct. 462, 151 L.Ed.2d 380 (2001).

Likewise, "[t]he plain view doctrine provides that evidence in plain view of the police can be seized without a warrant…." *Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa.Super. 2012), *appeal denied*, 616 Pa. 666, 51 A.3d 837 (2012) (quoting *Commonwealth v. Sodomsky*, 939 A.2d 363, 370 (Pa.Super. 2007), *cert. denied*, 556 U.S. 1282, 129 S.Ct. 2776, 174 L.Ed.2d 272 (2009)).

> This doctrine permits a valid warrantless seizure of an item where: (1) the police have not violated the Fourth Amendment in arriving at the location from which the item could be viewed; (2) the item is in plain view; (3) the incriminating character of the item is immediately

apparent; and (4) the police have a lawful right of access to the item itself.

***Commonwealth v. Jones***, 605 Pa. 188, 201, 988 A.2d 649, 656 (2010), *cert. denied*, ___ U.S. ___, 131 S.Ct. 110, 178 L.Ed.2d 32 (2010).

A consensual search also provides an exception to the warrant requirement. ***Commonwealth v Caban***, 60 A.3d 120 (Pa.Super. 2012), *appeal denied*, ___ Pa. ___, 79 A.3d 1097 (2013).

> [T]he central inquiries in consensual search cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent, and the voluntariness of the consent given. To establish a valid consensual search, the Commonwealth must first prove that the individual consented during a legal police interaction. Where the underlying encounter is lawful, the voluntariness of the consent becomes the exclusive focus.
>
> * * *
>
> [T]he Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. The inquiry is ultimately objective, and employs a reasonable person test presupposing an innocent person. The test for the validity of a consent to search is the same for both the Fourth Amendment and Article I, Section 8, *i.e.*, that the consent is given voluntarily.
>
> In reviewing the totality of the circumstances, Pennsylvania courts have considered a variety of factors to assess the voluntariness of the consent, including the length and location of the detention; whether there were any police abuses, physical contact, or use of physical restraints; any aggressive behavior or any use of language or tone by the officer that were not commensurate with the circumstances; whether the questioning was repetitive and prolonged; whether the person was advised that he or

> she was free to leave; and whether the person was advised of his or her right to refuse to consent.

*Id.* at 127, 130-31 (internal citations and quotation marks omitted).

Instantly, Officer Ference commenced the investigation of a hit-and-run accident on June 6, 2012. The occupants of one of the damaged vehicles abandoned their vehicle at the accident scene. Officer Ference's investigation revealed that the abandoned vehicle was a rental car. Inside the abandoned vehicle, Officer Ference recovered a rental agreement and Appellant's driver's license. The rental agreement listed Appellant as the renter.

On June 7, 2012, Officer Ference unsuccessfully attempted to contact Appellant by telephone. At approximately 9:00 a.m., Officer Ference and Officer Comney went to the address listed on Appellant's driver's license. When the officers knocked on the door of the residence, Appellant answered. The officers expressed their desire to talk about the motor vehicle accident, and Appellant invited them inside the residence.

Once inside, the officers sat with Appellant in the living room. The officers heard noises coming from the other rooms, and Appellant indicated Mr. Conahan and her two small children were present at the residence. Appellant called out to Mr. Conahan, who joined Appellant and the officers in the living room. The officers conducted a check of Appellant's and Mr. Conahan's identification cards. At that point, the officers discovered Mr. Conahan was "a wanted person." (**See** N.T. Suppression Hearing at 7.)

The officers immediately handcuffed Mr. Conahan and placed him under arrest. *See Commonwealth v. Williams, R.*, 2 A.3d 611 (Pa.Super. 2010) (*en banc*), *appeal denied*, 610 Pa. 585, 19 A.3d 1051 (2011) (holding probable cause to arrest is made out when facts and circumstances within knowledge of officer at time of arrest are sufficient to warrant person of reasonable caution in belief that suspect has committed crime). Mr. Conahan, however, was wearing only boxer shorts. Mr. Conahan asked Appellant to retrieve his clothing, and Appellant asked the officers for permission to go into her bedroom. Officer Ference permitted Appellant to go, but the officer accompanied her. At the suppression hearing, Officer Ference elaborated on his decision:

> [COMMONWEALTH]: And, Officer Ference, why would…you accompany her into the bedroom?
>
> [OFFICER]: Because we feel we were taking her boyfriend…into custody, you know, [we were worried about] any type of retaliation. Basically, for our safety. We don't want her coming out with any weapons or anything like that.

(*See* N.T. Suppression Hearing at 8.) Here, the suppression court correctly concluded that Officer Ference justifiably accompanied Appellant inside the bedroom to ensure the officers' safety. *See Taylor, supra*. *See also Commonwealth v. Davenport*, 453 Pa. 235, 308 A.2d 85 (1973) (holding police conducted legal, warrantless seizure of blood-stained items in plain view in defendant's bedroom; police went to defendant's rooming house to serve arrest warrant for defendant; police encountered defendant as he

walked out of bedroom; defendant asked for permission to finish dressing before being taken into custody; police accompanied defendant inside bedroom and observed blood-stained items; police justifiably escorted defendant into bedroom to protect against flight or procurement of weapon).

Inside the bedroom, Officer Ference watched Appellant attempt to conceal something:

> I followed [Appellant] into the room. She had gotten, I believe, some clothing off the bed. I believe [she] went to retrieve a cell phone from the nightstand beside the bed, and I observed her very quickly grab an item off the top of the dresser and attempt to shove it in the open dresser drawers.

(*See* N.T. Suppression Hearing at 8.) On top of the dresser, Officer Ference observed marijuana grinders and "chewing gum-sized rectangular…packages wrapped in newspaper and tape." (*Id.* at 11). Based on Officer Ference's training and experience with prior drug cases, he suspected that the packages contained heroin. Officer Ference asked Appellant to return to the living room. Officer Ference then contacted the Hanover Township Police Department to notify it about the drugs.

Significantly, Officer Ference first noticed the contraband from a lawful vantage point, because concerns for officer safety justified the officer's decision to accompany Appellant into the bedroom. Based upon his training and experience, Officer Ference recognized the drug paraphernalia. Officer Ference also recognized the rectangular packages as containers for narcotics. The incriminating character of the packages was immediately

apparent to Officer Ference. (*Id.* at 12.) Therefore, Officer Ference satisfied each prong of the plain view doctrine. *See Jones, supra*.

In response to the call from Officer Ference, Sergeant Orzechowski arrived at the residence. Sergeant Orzechowski secured the bedroom and contacted Officer Stefanowicz, a Hanover Township narcotics officer. While waiting for Officer Stefanowicz to arrive, Sergeant Orzechowski advised Appellant of her *Miranda* rights and provided her with a *Miranda* rights waiver form. Appellant indicated that she understood her rights, and she completed the waiver form. Sergeant Orzechowski also supplied Appellant with a "consent to search waiver," which Appellant signed. (*See* N.T. Suppression Hearing at 31.) Although Sergeant Orzechowski did not actually question Appellant, he noted that Appellant appeared calm and remained cooperative throughout their interaction.

Officer Stefanowicz arrived while Appellant was executing the waiver forms. Officer Stefanowicz confirmed that Sergeant Orzechowski spoke to Appellant in a calm, professional manner. Moreover, the officers at the scene did not draw their firearms during the interaction with Appellant. After Appellant completed the waiver forms, she spoke to Officer Stefanowicz, informing him of the location of the contraband. Officer Stefanowicz proceeded to the bedroom and recovered the contraband. The contents of the rectangular packages tested positive for heroin. Based upon the foregoing, the suppression court correctly determined that Appellant

legally consented to the officer's search of the bedroom. *See Caban,*
*supra*. We conclude the court properly denied Appellant's suppression
motion.

In her second issue, Appellant asserts the sentencing court imposed a
mandatory minimum term of three (3) years' imprisonment, because the
police recovered 7.9 grams of heroin from her bedroom. Relying on the
United States Supreme Court's decision in *Alleyne, supra*, as well as this
Court's ruling in *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super.
2014) (*en banc*), Appellant argues that the court imposed the mandatory
minimum term pursuant to an unconstitutional statute. Appellant
acknowledges that she did not raise this claim at sentencing, in a post-
sentence motion, or in her Rule 1925(b) statement, and raised it for the first
time in her appellate brief. Nevertheless, Appellant suggests it is
appropriate for this Court to review the sentence on this basis.[4] Appellant
concludes the court imposed an illegal sentence for her PWID conviction, and

_____

[4] We are mindful of the decision in *Alleyne*, in which the United States
Supreme Court expressly held that any fact increasing the mandatory
minimum sentence for a crime is considered an element of the crime to be
submitted to the fact-finder and found beyond a reasonable doubt. Here,
the court imposed the mandatory minimum sentence per 18 Pa.C.S.A. §
7508 for Appellant's PWID conviction. Consequently, we elect to review the
legality of Appellant's PWID sentence. *See Commonwealth v. Edrington*,
780 A.2d 721 (Pa.Super. 2001) (explaining challenge to application of
mandatory minimum sentence is non-waiveable challenge to legality of
sentence, which this Court can raise *sua sponte*).

this Court must vacate the sentence and remand the matter for resentencing. We agree.

Section 7508(a)(7)(ii) sets forth a mandatory minimum sentence of three (3) years' imprisonment where a defendant is convicted of PWID involving at least five (5) grams but less than fifty (50) grams of heroin. 18 Pa.C.S.A. § 7508(a)(7)(ii). Section 7508(b) states that the statutory provisions shall not be an element of the crime and applicability of the statute shall be determined at sentencing by a preponderance of the evidence. 18 Pa.C.S.A. § 7508(b). Recently, in **Newman, supra**, this Court addressed the constitutionality of a similar statute, 42 Pa.C.S.A. § 9712.1, in light of the United States Supreme Court's decision in **Alleyne, supra**.[5] Relying on **Alleyne**, **Newman** held that Section 9712.1 can no longer pass constitutional muster as it "permits the trial court, as opposed to the jury, to increase a defendant's minimum sentence based upon a preponderance of the evidence that the defendant was dealing drugs and possessed a firearm, or that a firearm was in close proximity to the drugs." **Newman, supra** at 98. Thus, this Court vacated Newman's PWID sentence and remanded for resentencing without imposition of the mandatory

---

[5] This Court also made clear that **Alleyne** is subject to limited retroactivity; in other words, **Alleyne** is applicable to all criminal cases still pending on direct review. **Newman, supra** at 90. Because Newman's case was still pending on direct appeal, the holding in **Alleyne** applied to Newman's case, as it also does here in this direct appeal.

minimum under Section 9712.1. *See also Commonwealth v. Valentine*, 101 A.3d 801 (Pa.Super. 2014) (extending logic of *Alleyne* and *Newman* to Sections 42 Pa.C.S.A. §§ 9712, 9713 and holding those sections are likewise unconstitutional insofar as they permit automatic increase of defendant's sentence based on preponderance of evidence standard).

Subsequently, this Court directly addressed the constitutionality of Section 7508 in *Commonwealth v. Vargas*, ___ A.3d ___, 2014 PA Super 289 (filed December 31, 2014) (*en banc*), where the court imposed a mandatory minimum sentence for a PWID conviction, pursuant to Section 7508(a)(7)(iii). On appeal, this Court emphasized that Section 7508 "is structured in the same manner as the statutes at issue in *Newman* and *Valentine*...." *Id.* at **17**. This Court concluded that Section 7508 is also unconstitutional.

Instantly, the court conducted a bench trial and convicted Appellant of possession of a controlled substance and PWID. At sentencing, the court applied Section 7508. Given this Court's binding decisions in *Newman*, *Valentine*, and *Vargas*, however, we must vacate and remand for resentencing. Accordingly, we affirm Appellant's convictions but vacate the judgment of sentence and remand for resentencing without imposition of a mandatory minimum sentence.

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/2/2015