J. S33009/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
CASSEEM CAIN, : No. 2792 EDA 2014
:
Appellant :


Appeal from the Judgment of Sentence, August 26, 2014,
in the Court of Common Pleas of Delaware County
Criminal Division at No. CP-23-CR-0008250-2013


BEFORE: FORD ELLIOTT, P.J.E. DONOHUE AND LAZARUS, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED AUGUST 10, 2015**

Appellant appeals the judgment of sentence contending that the trial court erred in failing to suppress the evidence against him. We affirm.

On July 23, 2014, a jury found appellant guilty of two counts of possessing a controlled substance with intent to deliver, and two counts of simple possession.[1] On August 26, 2014, the trial court imposed an aggregate sentence of 36 to 72 months' imprisonment plus 3 years' probation. During trial, the parties litigated a suppression motion which sought suppression of evidence recovered when police performed an initial *Terry* stop of appellant on November 20, 2013,[2] and also subsequent

---

[1] 35 P.S. § 780-113(a)(30) and (a)(16), respectively.

[2] *Terry v. Ohio*, 392 U.S. 1 (1969).

evidence uncovered at appellant's apartment pursuant to a search warrant which was obtained predicated on the evidence uncovered during the *Terry* stop. The trial court made the following findings of fact after the suppression hearing:

1. On November 20, 2013, Darby Borough Police Officer John Ettore arrested and charged the Defendant, Caseem Cain, with: three counts of Possession With Intent to Deliver a Controlled Substance (Cocaine), three counts Possession of a Controlled Substance, (Cocaine), three counts of Possession of Drug Paraphernalia, Selling Controlled Substance Without Label, (Xanax) and Endangering Welfare of Children.

2. On April 4, 2014, Defendant, through counsel, filed a Motion to Suppress Evidence requesting the suppression of items found and seized from his person: (1) one clear glassine baggie containing a white solid suspected of being crack cocaine, (2) $1,081.00 U.S. currency, (3) keys, and a (4) a cell phone.

3. The Defendant alleges that his stop, search, and arrest were made without reasonable suspicion and/or probable cause.

4. Defendant, through counsel, in his Motion to Suppress Evidence also requests the suppression of items found and seized as a result of a search warrant of his residence. The following items were seized from his residence: (1) a cellophane wrapper containing suspected cocaine, (2) rental receipts, (3) a postal receipt, (4) an appointment card from Adult Probation, (5) three five dollar bills, (6) two small glassine baggies, (7) a digital scale, (8) one unmarked prescription bottle containing blue pills, (9) a bag of change containing approximately $36.85, (10) two parcels of mail addressed to the defendant,

(11) one apple-designed clear baggie, (12) one composition notebook, (13) numerous correspondence between the defendant and his attorney, the courts, and prison, and (14) men's clothing.

5.   The Defendant alleges that the search pursuant to search warrant was in violation of his rights under the 4th, 5th, and 14th amendments of the U.S. Constitution, Article I, Section 8 and Section 9 of the Pennsylvania Constitution.

6.   On April 16, 2014, a Suppression Hearing was held on Defendant's "Suppression Motion."

7.   The Suppression Hearing began with arguments to determine whether the Defendant had an expectation of privacy in the apartment located at 17 N. 2nd Street in Darby, Pennsylvania that the Police searched.

8.   The Defendant testified that he lived on the top floor apartment, 17B, located at 17 N. 2nd Street in Darby, Delaware County, Pennsylvania.  The Defendant had been renting the apartment from Crystal Davis and her mother, Michelle Davis.  He resided at the apartment with Crystal and Michelle Davis.  He had rented the apartment for about a month.  The Defendant possessed keys for the apartment.  The Defendant paid Michelle Davis $200.00 per month for rent.  He paid cash and had receipts that were seized by the Police at the time of the raid.  The receipts, which were from a receipt form indicating rent, were located on a shelf, when the police seized them.

9.   The Court determined that the Defendant had an expectation of privacy in apartment 17B located at 17 N. 2nd Street in Darby, Pennsylvania.

10. Subsequent to this determination, part-time Police Officer John Ettore, an Officer with the Darby Borough Police Department, testified. Officer Ettore testified that 17 N. 2nd street is a high-crime and high-drug area. In fact, the Officer has been involved in fifty (50) drug investigations in that vicinity and has about forty (40) drug arrests in that area.

11. Officer Ettore testified that he previously knew of the Defendant from the County Drug Task Force and through information received from a Confidential Informant. The Confidential Informant provided information that the Defendant was staying at 17 N. 2nd Street. The Officer stated that the Confidential Informant also provided information that the Defendant was engaged in drug transactions. Despite this knowledge, however, the Confidential Informant was never used to obtain drugs from the Defendant.

12. Prior to stopping Defendant on November 20, 2013, Officer Ettore had observed the Defendant traveling on Main Street in Darby, Pennsylvania and observed the Defendant engage in hand to hand transactions. During these transactions, money was exchanged for an item. These transactions had occurred in the morning near the "Wishing Well Bar", when the Bar was not open, and also in the evening.

13. On redirect, Officer Ettore testified that two weeks prior to the incident at issue, Officer Ettore and Officer Paul McGrenera observed an exchange by the Defendant and another individual in the evening. Officer McGrenera, with the assistance of Officer Ettore, attempted to stop the other individual involved in the transaction who ran away. Both the Defendant and the other individual managed to evade the Officers.

14. On November 20, 2013, at 9:40 a.m., Officer Ettore was on duty working patrol when he received a radio transmission reporting that the Defendant had just left his residence. At this point, Officer Ettore had been two blocks away in uniform and a marked patrol vehicle. Officer Ettore drove down Main Street and observed the Defendant walking on Main Street towards the 500 block of Main Street.

15. As soon as Officer Ettore saw the Defendant, the Officer observed the Defendant take something out of his pocket in his fist and look back at the Officer. Officer Ettore further explained that the Defendant was wearing a sweatshirt and removed something from his left pocket and looked back at the Officer. Officer Ettore testified that he could not tell what the object was. Officer Ettore also testified that he had reason to believe that that [sic] the Defendant was traveling to the Wishing Well Bar.

16. As soon as Officer Ettore observed the Defendant pull something from his pocket, Officer Ettore called Officer Paul McGrenera. Officer Ettore testified that he intended to stop the Defendant when he saw the Defendant remove something from his pocket. Officer Ettore also testified that he did not intend to arrest the Defendant on the morning of the incident. The two Officers pulled up onto the sidewalk upon which the Defendant was walking. Officer Ettore testified that neither he nor Officer McGrenera activated their overhead lights at the time of the stop.

17. Officers Ettore and McGrenera exited their respective vehicles with no weapons drawn. When Officer Ettore exited his vehicle, he was approximately (3) three to (4) four feet away from the Defendant and saw the Defendant throw a clear, plastic baggie on the ground. Officer Ettore further clarified that he had been

approaching the Defendant from behind, with the Defendant's back to the Officer, and that the Defendant threw the baggie in the Officer's direction. At this point, neither Officer had spoken to the Defendant.

18. The baggie that Officer Ettore observed the Defendant discard was a clear, plastic baggie containing four smaller baggies with a white substance inside. The Officer observed the baggie on the ground before telling the Defendant to place his hands on the vehicle. The Defendant was then placed under arrest. The contents of the baggie field-tested positively for cocaine.

19. On cross examination, Officer Ettore testified that he prepared the Affidavit of Probable Cause for the search warrant. The basis for the search warrant was the contraband recovered at the stop.

20. After Officer Ettore's testimony, Officer Paul McGrenera testified. Officer McGrenera has been a Yeadon Borough Patrolman for the past five years. On the date of the incident, Officer McGrenera had been a Darby Borough Patrolman for three years. Officer McGrenera testified that N. 2nd Street is known to be a high-crime and high-drug area. Officer McGrenera has been involved in more than 100 investigations for drugs and more than 50 arrests for drugs in the vicinity of this incident.

21. Officer McGrenera testified that he knew the Defendant prior to this incident. In the month prior to this incident, Officer McGrenera had observed the Defendant in the same area around the Wishing Well Bar both in the morning and evening hours. The Wishing Well Bar is not open during the morning hours.

22. On November 20, 2013, Officer McGrenera was on duty and in uniform. The Officer received a call from Officer Ettore that Officer Ettore was going to make an investigatory stop. Officer McGrenera testified that he did not intend to arrest the Defendant on the morning of the incident.

23. Officer McGrenera testified that he pulled up onto the sidewalk upon which the Defendant was walking. As the Officer exited his patrol vehicle, he saw the Defendant discard a clear, plastic baggie. At this point, the Defendant was ordered to place his hands on the patrol vehicle.

24. The Defendant also testified. The Defendant testified that he had been walking along the sidewalk when two police officers pulled up and told him to put his hands up. The Defendant contends that he took his hands out of his pocket and, as a result, the baggie fell out of his pocket. On cross-examination, the Defendant testified that the Officers did not activate their overhead lights on their patrol vehicles.

Order Denying Defendant's Suppression Order, 5/1/14 at 1-5.

We begin our analysis with our standard of review:

Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Wilson*, 111 A.3d 747, 754 (Pa.Super. 2015), quoting

*Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa.Super. 2002)

(citations omitted).

Our courts have recognized three levels of interaction between police

and citizens, each requiring three increasing quantities of suspicion:

> The first of these is a "mere encounter" (or request
> for information) which need not be supported by any
> level of suspicion, but carries no official compulsion
> to stop or respond.  The second, an "investigative
> detention" must be supported by reasonable
> suspicion; it subjects a suspect to a stop and period
> of detention, but does not involve such coercive
> conditions as to constitute the functional equivalent
> of arrest.  Finally, an arrest or "custodial detention"
> must be supported by probable cause.

*Commonwealth v. Carter*, 105 A.3d 765, 768 (Pa.Super. 2014), quoting

*Commonwealth v. Williams*, 73 A.3d 609, 613 (Pa.Super. 2013) (citation

omitted), *appeal denied*, 87 A.3d 320 (Pa. 2014).  Instantly, the police

interaction with appellant would constitute an investigative detention

requiring reasonable suspicion.

> [T]o establish grounds for reasonable suspicion, the
> officer must articulate specific observations which, in
> conjunction with reasonable inferences derived from
> those observations, led him reasonably to conclude,
> in light of his experience, that criminal activity was
> afoot and that the person he stopped was involved in
> that activity.  The question of whether reasonable
> suspicion existed at the time [the officer conducted
> the stop] must be answered by examining the
> totality of the circumstances to determine whether
> the officer who initiated the stop had a particularized
> and objective basis for suspecting the individual
> stopped.

*Commonwealth v. Postie*, 110 A.3d 1034, 1039 (Pa.Super. 2015), quoting

*Commonwealth v. Muhammed*, 992 A.2d 897, 900-901 (Pa.Super. 2010)

(citations omitted).

We find the trial court's findings and conclusions are supported by the record and we affirm on the basis of the trial court's opinion. Experienced police officers witnessed several suspicious hand-to-hand transactions by appellant in a high drug activity area. They were familiar with appellant having been alerted to his activity by a confidential informant and their own observations. Weeks prior to the investigatory stop in this case, appellant evaded another investigatory stop by the same officers after their observation of a suspicious hand-to-hand transaction with another individual who fled. Clearly, appellant was under suspicion as a drug dealer and stopped en route to an area where he had previously been observed engaging in such activity. Prior to appellant actually being stopped or spoken to by the officers, he threw contraband to the ground. The investigatory stop was reasonable. The discarded contraband was not coerced.

Judgment of sentence affirmed.

J. S33009/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/10/2015

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  |  NO. 8250-2013

v.

CASEEM CAIN

Matthew DeNucci, Esquire, Assistant District Attorney for the Commonwealth
Kenneth Sexton, Esquire, Attorney for the Defendant

### ORDER DENYING DEFENDANT'S SUPPRESSION MOTION

AND NOW, this 29th day of April, 2014 upon consideration of the Defendant's

"Suppression Motion" and the Suppression Hearing held on April 16, 2014, it is hereby

ORDERED AND DECREED that the Motion is **DENIED.**

The Court finds as follows:

I.     **FINDINGS OF FACT**

1.     On November 20, 2013, Darby Borough Police Officer John Ettore arrested and charged the Defendant, Caseem Cain, with: three counts of Possession With Intent to Deliver a Controlled Substance[1] (Cocaine), three counts Possession of a Controlled Substance,[2] (Cocaine), three counts of Possession of Drug Paraphernalia,[3] Selling Controlled Substance Without Label,[4] (Xanax) and Endangering Welfare of Children.[5]

2.     On April 4, 2014, Defendant, through counsel, filed a Motion to Suppress Evidence requesting the suppression of items found and seized from his person: (1) one clear glassine baggie containing a white solid suspected of being crack cocaine, (2) $1,081.00 U.S. currency, (3) keys, and a (4) a cell phone.

---

[1] 35 Pa.C.S. §780-113(a)(30)
[2] 35 Pa.C.S. §780-113(a)(16)
[3] 35 Pa.C.S. §780-113(a)(32)
[4] 18 Pa.C.S. §780-113(a)(18)
[5] 18 Pa.C.S. §4304(a)(1)

3. The Defendant alleges that his stop, search, and arrest were made without reasonable suspicion and/or probable cause.

4. Defendant, through counsel, in his Motion to Suppress Evidence also requests the suppression of items found and seized as a result of a search warrant of his residence. The following items were seized from his residence: (1) a cellophane wrapper containing suspected cocaine, (2) rental receipts, (3) a postal receipt, (4) an appointment card from Adult Probation, (5) three five dollar bills, (6) two small glassine baggies, (7) a digital scale, (8) one unmarked prescription bottle containing blue pills, (9) a bag of change containing approximately $36.85, (10) two parcels of mail addressed to the defendant, (11) one apple-designed clear baggie, (12) one composition notebook, (13) numerous correspondence between the defendant and his attorney, the courts, and prison, and (14) men's clothing[6].

5. The Defendant alleges that the search pursuant to search warrant was in violation of his rights under the 4th, 5th and 14th amendments of the U.S. Constitution, Article I, Section 8 and Section 9 of the Pennsylvania Constitution.

6. On April 16, 2014, a Suppression Hearing was held on Defendant's "Suppression Motion."

7. The Suppression Hearing began with arguments to determine whether the Defendant had an expectation of privacy in the apartment located at 17 N. 2nd Street in Darby, Pennsylvania that the Police searched.

8. The Defendant testified that he lived on the top floor apartment, 17B, located at 17 N. 2nd Street in Darby, Delaware County, Pennsylvania. The Defendant had been renting the apartment from Crystal Davis and her mother, Michelle Davis. He resided at the apartment with Crystal and Michelle Davis. He had rented the apartment for about a month. The Defendant possessed keys for the apartment. The Defendant paid Michelle Davis $200.00 per month for rent. He paid cash and had receipts that were seized by the Police at the time of the raid. The receipts, which were from a receipt form indicating rent, were located on a shelf, when the police seized them.

9. The Court determined that the Defendant had an expectation of privacy in apartment 17B located at 17 N. 2nd Street in Darby, Pennsylvania.

10. Subsequent to this determination, part-time Police Officer John Ettore, an Officer with the Darby Borough Police Department, testified. Officer Ettore testified that 17 N. 2nd street is a high-crime and high-drug area. In fact, the

---

[6] The Defendant's Suppression Motion (at averment 11) alleges that the Defendant gave inculpatory statements concerning the above crimes as a result of his stop and arrest but the issue of an incriminating statement was not raised at the Suppression Hearing.

Officer has been involved in fifty (50) drug investigations in that vicinity and has about forty (40) drug arrests in that area.

11. Officer Ettore testified that he previously knew of the Defendant from the County Drug Task Force and through information received from a Confidential Informant. The Confidential Informant provided information that the Defendant was staying at 17 N. 2nd Street. The Officer stated that the Confidential Informant also provided information that the Defendant was engaged in drug transactions. Despite this knowledge, however, the Confidential Informant was never used to obtain drugs from the Defendant.

12. Prior to stopping Defendant on November 20, 2013, Officer Ettore had observed the Defendant traveling on Main Street in Darby, Pennsylvania and observed the Defendant engage in hand to hand transactions. During these transactions, money was exchanged for an item. These transactions had occurred in the morning near the "Wishing Well Bar", when the Bar was not open, and also in the evening.

13. On redirect, Officer Ettore testified that two weeks prior to the incident at issue, Officer Ettore and Officer Paul McGrenera observed an exchange by the Defendant and another individual in the evening. Officer McGrenera, with the assistance of Officer Ettore, attempted to stop the other individual involved in the transaction who ran away. Both the Defendant and the other individual managed to evade the Officers.

14. On November 20, 2013, at 9:40 a.m., Officer Ettore was on duty working patrol when he received a radio transmission reporting that the Defendant had just left his residence. At this point, Officer Ettore had been two blocks away in uniform and a marked patrol vehicle. Officer Ettore drove down Main Street and observed the Defendant walking on Main Street towards the 500 block of Main Street.

15. As soon as Officer Ettore saw the Defendant, the Officer observed the Defendant take something out of his pocket in his fist and look back at the Officer. Officer Ettore further explained that the Defendant was wearing a sweatshirt and removed something from his left pocket and looked back at the Officer. Officer Ettore testified that he could not tell what the object was. Officer Ettore also testified that he had reason to believe that that the Defendant was traveling to the Wishing Well Bar.

16. As soon as Officer Ettore observed the Defendant pull something from his pocket, Officer Ettore called Officer Paul McGrenera. Officer Ettore testified that he intended to stop the Defendant when he saw the Defendant remove something from his pocket. Officer Ettore also testified that he did not intend to arrest the Defendant on the morning of the incident. The two Officers pulled up onto the sidewalk upon which the Defendant was walking. Officer

3

Ettore testified that neither he nor Officer McGrenera activated their overhead lights at the time of the stop.

17. Officers Ettore and McGrenera exited their respective vehicles with no weapons drawn. When Officer Ettore exited his vehicle, he was approximately (3) three to (4) four feet away from the Defendant and saw the Defendant throw a clear, plastic baggie on the ground. Officer Ettore further clarified that he had been approaching the Defendant from behind, with the Defendant's back to the Officer, and that the Defendant threw the baggie in the Officer's direction. At this point, neither Officer had spoken to the Defendant.

18. The baggie that Officer Ettore observed the Defendant discard was a clear, plastic baggie containing four smaller baggies with a white substance inside. The Officer observed the baggie on the ground before telling the Defendant to place his hands on the vehicle. The Defendant was then placed under arrest. The contents of the baggie field-tested positively for cocaine.

19. On cross examination, Officer Ettore testified that he prepared the Affidavit of Probable Cause for the search warrant. The basis for the search warrant was the contraband recovered at the stop.

20. After Officer Ettore's testimony, Officer Paul McGrenera testified. Officer McGrenera has been a Yeadon Borough Patrolman for the past five years. On the date of the incident, Officer McGrenera had been a Darby Borough Patrolman for three years. Officer McGrenera testified that N. 2nd Street is known to be a high-crime and high-drug area. Officer McGrenera has been involved in more than 100 investigations for drugs and more than 50 arrests for drugs in the vicinity of this incident.

21. Officer McGrenera testified that he knew the Defendant prior to this incident. In the month prior to this incident, Officer McGrenera had observed the Defendant in the same area around the Wishing Well Bar both in the morning and evening hours. The Wishing Well Bar is not open during the morning hours.

22. On November 20, 2013, Officer McGrenera was on duty and in uniform. The Officer received a call from Officer Ettore that Officer Ettore was going to make an investigatory stop. Officer McGrenera testified that he did not intend to arrest the Defendant on the morning of the incident.

23. Officer McGrenera testified that he pulled up onto the sidewalk upon which the Defendant was walking. As the Officer exited his patrol vehicle, he saw the Defendant discard a clear, plastic baggie. At this point, the Defendant was ordered to place his hands on the patrol vehicle.

4

24. The Defendant also testified. The Defendant testified that he had been walking along the sidewalk when two police officers pulled up and told him to put his hands up. The Defendant contends that he took his hands out of his pocket and, as a result, the baggie fell out of his pocket. On cross-examination, the Defendant testified that the Officers did not activate their overhead lights on their patrol vehicles.

## II. CONCLUSIONS OF LAW

### I. Motion to Suppress Evidence/Reasonable Suspicion

1. The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protects individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." Commonwealth v. Blair, 575 A.2d 593, 596 (Pa. Super. 1990).

2. To secure the right of its citizens to be free from intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. Commonwealth v. Boswell, 554 Pa. 275, 721 A.2d 336 (1998). The Court determined that interactions between police and citizens may be characterized as a "mere encounter," an "investigative detention," or a "custodial detention."

3. The first of these interactions is a "mere encounter", or a request for information, which need not be supported by any level of suspicion. It does not implicate the Fourth Amendment. See Commonwealth v. Bradley, 724 A.2d 351 (Pa. Super. 1999).

5

4. The second level is an "investigative detention," or as commonly referred to a *Terry* stop, which must be supported by reasonable suspicion that the person seized is engaged in criminal activity. *Id.*

5. If the interaction rises to the level of an investigative detention, the police must possess reasonable and articulable suspicion that criminal activity is afoot. Commonwealth v. Jackson, 428 Pa.Super. 246, 249, 630 A.2d 1231, 1233 (1993). In order to demonstrate reasonable suspicion, the police officer must be able to point to specific and articulable facts and reasonable inferences drawn from those facts in light of his or her experience. Jackson, 698 A.2d at 573.

6. The third level is a custodial detention, which requires probable cause. Probable cause exists if there are facts and circumstances within the police officer's knowledge that would warrant a person of reasonable caution to believe an offense has been committed. Commonwealth v. Myers, 728 A.2d 960, 962 (Pa. Super. 1999).

7. To evaluate the level of suspicion possessed by an officer, the court must view the totality of the circumstances through the eyes of a trained officer. See, Commonwealth v. Riley, 715 A.2d 1131, 1135 (Pa.Super. 1998), *appeal denied*, 558 Pa. 617, 737 A.2d 741 (1999).

8. In considering the totality of the circumstances, the court must take into account all relevant facts when determining whether a warrantless arrest was supported by probable cause. In re O.A., 717 A.2d 490, 495 (Pa.1998).

6

9. In the case of <u>Commonwealth v. Johnson</u>, 849 A.2d 1236, (Pa. Super. 2004) the Superior Court held that a reliable CI's tip of a man arriving at a location with drugs provided reasonable suspicion for an investigatory detention.

10. Information provided by an informant may legitimately form the basis for probable cause where, for example, "police independently corroborate the tip." <u>Commonwealth v. Luv</u>, 735 A.2d 87, 90 (Pa. 1999).

11. The Pennsylvania Supreme Court has held that a CI's tip, alone, does not establish probable cause to make a warrantless arrest. An arresting officer must corroborate the tip to establish probable cause. See, <u>Commonwealth v. O.A.</u>, 717 A.2d 490 (Pa. 1998).

12. In the case *sub judice*, the Darby police had received information from a reliable CI, advising them that the defendant was involved in drug activity. The information given to the police provided predictive behavior that was able to be corroborated by the police. See, <u>Commonwealth v. Griffin</u>, 954 A.2d 648, 651 (Pa. Super. 2008). Here, Officer Ettore and Officer McGrenera were able to corroborate the CI's tip and observed the Defendant engage in hand to hand drug transactions on prior occasions to November 20, 2013.

13. It merits emphasis that this case involves: (1) the tip of a CI, (2) police surveillance which confirmed the predictive information provided by the CI, (3) experienced officers in a high-crime, high-drug area (4) both Officers observed Defendant's prior actions which the Officers believed to be drug transactions and (4) Officer Ettore and Officer McGrenera observing the Defendant throwing contraband in plain view.

7

14. The totality of circumstances arising from the CI's tip plus the Officers' independent corroboration through surveillance provided the Officer with probable cause to arrest the Defendant without a warrant.

15. This Court finds that the underlying initial encounter between Officer Ettore and the Defendant began as an investigative detention. Officer Ettore received a radio transmission that morning that the Defendant had left his residence. The Officer observed the Defendant walking on Main Street in Darby, Pennsylvania in the direction of the Wishing Well Bar. This is a high-drug, high-crime area. Prior to stopping Defendant on November 20, 2013, Officer Ettore had observed the Defendant traveling on Main Street and observed the Defendant engage in hand to hand transactions. During these transactions, money was exchanged for an item. These transactions had occurred in the morning near the "Wishing Well Bar", when the Bar was not open, and also in the evening. The Court finds that the Officer's observations alone gave rise to a reasonable and articulable suspicion of some illegal activity justifying a brief investigative detention.

16. When the Officer arrived at the scene, he observed the Defendant take something from his left pocket and throw it to the ground. When Officer Ettore exited his vehicle, he was approximately (3) three to (4) four feet away from the Defendant when he observed the Defendant throw a clear, plastic baggie on the ground. There was no conversation between the Defendant and the Officer prior to the Officer observing the Defendant throwing the contraband. The baggie that Officer Ettore observed the Defendant discard was determined by the Officer to be a clear, plastic baggie containing four smaller baggies with a white substance

8

inside. The Officer observed the baggie on the ground before telling the Defendant to place his hands on the vehicle. The contents of the baggie field-tested positively for cocaine.

10. The testimony of the two Officers was credible.

11. The court finds that based upon the totality of the circumstances, Officers Ettore and McGrenera had reasonable suspicion that criminal activity was afoot to justify stopping the Defendant. However, upon approaching the Defendant the Officers had not only reasonable suspicion but had probable cause to arrest the Defendant because they observed the Defendant throw contraband to the ground.

12. Consequently, this Court ultimately finds that there was no unlawful action of law enforcement in violation of the Defendant's rights under Article 1, Section 8 of the Constitution of the Commonwealth of Pennsylvania or the 4th, 5th and 14th Amendments to the United States Constitution.

II. **Motion to Suppress Evidence/Plain View**

1. The United States Supreme Court has held that there is no reasonable expectation of privacy where an object is in plain view. Commonwealth v. Petroll, 738 A.2d 993, 999 (Pa. 1999) citing Ill. v. Gates, 462 U.S. 213 (1983).

2. The plain view doctrine permits the warrantless seizure of evidence in plain view when: (1) an officer views the object from a lawful vantage point; and (2) it is immediately apparent to him that the object is incriminating and (3) the police must have a lawful right of access to the object. Commonwealth v. McCree, 592 Pa. 238, 924 A.2d 621 (2007).

9

3. In the case of Commonwealth v. Guzman, 44 A.3d 688, 695 (Pa. Super. 2012) the Superior Court held that a Police Officer properly seized drugs discovered in the front seat of a vehicle, under the plain view doctrine. citing Commonwealth v. Brown, 23 A.3d 544, 551–52 (Pa.Super.2011) (*en banc* ) (citing Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)) (stating plain view doctrine allows warrantless seizure of items when: (1) police observe item from lawful vantage point; (2) incriminating nature of item is immediately apparent; and (3) police have lawful right of access to object).The court opined:

> Here, Officer Wetzel was in a lawful vantage point outside the SUV. Because Appellee had left the door open when he voluntarily jumped out of the car, Officer Wetzel needed only to stand outside the car and look inside. The drugs in question were located in a transparent package on the floor, sticking out from beneath the passenger seat; and Officer Wetzel immediately recognized the contents as illegal narcotics.

Commonwealth v. Guzman, 44 A.3d 688, 695 (Pa. Super.. 2012).

6. The facts in the case *sub judice* are similar to those in Guzman. The drugs in question were located in a transparent package viewed in plain view. Officer Ettore immediately recognized the contents as illegal narcotics. The Officer viewed the contraband from a public street on Main Street in Darby, PA, a lawful vantage point. This meets the first prong of the plain view analysis.

9. The second prong of the plain view analysis requires that it must be immediately apparent to the officer that the object is incriminating. Here, it was immediately apparent to the trained Officer that the clear plastic baggie contained contraband.

10

10. Finally, the police officer must have lawful right of access to the objects. Officer Ettore had a lawful right of access to an object thrown to the ground on a public street.

11. The court finds the seizure of the contraband was within the parameters of the plain view exception to the warrant requirement justifying seizure of the items in plain view. The Defendant's Constitutional rights were not offended by the seizure.

III.    **Motion to Suppress Evidence/ Forced Abandonment**

17. As Officer Ettore approached the Defendant, he threw a clear plastic baggie to the ground. The clear, plastic baggie contained four smaller baggies with a white substance inside. The Officer observed the baggie on the ground before arresting the Defendant. The contents of the baggie field-tested positively for cocaine. The Defendant alleges in his Omnibus Pretrial Motion that this incriminating item was abandoned as a result of the illegal action of law enforcement. He urges this court to apply the doctrine of forced abandonment, reasoning that the Officer forced him to abandon the baggie through his illegal seizure of him. Since there was no unlawful police action in this case, there can be no "forced abandonment". Commonwealth v. Tillman, 423 Pa. Super. 343, 621 A.2d 148 (1993).

11

18. In the case *sub judice*, the doctrine of forced abandonment is inapposite. The Defendant's abandonment of the contraband was not the result of any police coercion.

### III. Motion to Suppress Evidence/Search Warrant

1. Defendant alleges in his "Suppression Motion" that the search warrant that the Darby police obtained to search his residence located at 17th N. 2nd St. Apt. B, Darby, PA 19023 was illegal because the search warrant was not based upon probable cause.

2. Earlier in the day, on November 20, 2013, Officer Ettore properly seized drugs the Defendant had thrown to the ground on Main Street, as incriminating evidence found in plain view. As a result, there was probable cause for the search warrant issued of Defendant's residence.

WHEREFORE, Defendant's Omnibus Pre-Trial Motion is **DENIED**. The Defendant's arrest was legal and all evidence seized at the time of Defendant's arrest and pursuant to the execution of the search warrant shall be admissible at trial.

Trial in the above-captioned matter is scheduled for **May 5, 2014 at 9:00 A.M. in Courtroom 2.**

BY THE COURT:



JAMES F. NILON, JR.

12